# TEXAS & PACIFIC RAILWAY COMPANY *v.* RIGSBY.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 523.   Argued February 21, 1916.—Decided April 17, 1916.

Disregard of the Safety Appliance Act is a wrongful act; and, where it results in damage to one of the class for whose especial benefit it was enacted, the right to recover the damages from the party in default is implied:—*ubi jus ibi remedium.*

An employee of a railroad company has a right of action against the company for damages sustained by reason of defective appliances in violation of the Safety Appliance Act even though he was engaged at the time in intrastate, and not interstate, commerce.

Congress may, in the exercise of the plenary power to regulate commerce between the States, require installation of safety appliances on cars used on highways of interstate commerce irrespective of the use made of any particular car at any particular time.

When Congress enters a field of regulation within its paramount authority, state regulation of that subject-matter is excluded; and so *held* that, without leave of Congress, a State can no more make or enforce laws inconsistent with the Federal Safety Act giving redress for injuries to workmen or travelers occasioned by absence or insecurity of such safety devices than it can prescribe the character of the appliances.

The right of private action by an employee injured while engaged in duties unconnected with interstate commerce, but injured by a defect in a safety appliance required by act of Congress, has such relation to the operation of such act as a regulation of interstate commerce that it is within the constitutional grant of authority to Congress over that subject,

Although § 4 of the Safety Appliance Act of 1910 relieves the carrier from statutory penalties while a car is being hauled to the nearest available point for repairs, it does not relieve the carrier from liability in a remedial action for the death or injury of an employee caused by, or in connection with, the movement of a defectively equipped car.

Whether the defective condition of a car under the Federal Safety Appliance Act is or is not due to negligence of the carrier is immaterial, as the Act imposes an absolute and unqualified duty to maintain the appliance in secure condition; nor under § 8 of the Act of 1893 and § 5 of the Act of 1910 is an employee deemed to have assumed the risk although continuing in the employment after knowledge of the defect.

222 Fed. Rep. 221, affirmed.

THE facts, which involve the construction of the Safety Appliance Act and the validity of a verdict against the carrier, are stated in the opinion.

*Mr. F. H. Prendergast* for plaintiff in error:

Defendant in error received injury caused by a defective ladder on a box car while he was working as a switchman in the yard at Marshall, Texas.

He recovered under the Safety Appliance Act.

To recover he must bring himself under the Safety Appliance Act and under the Employers' Liability Act. Both the car and the man must be engaged in interstate commerce. *Ill. Cent. Ry.* v. *Behrens,* 233 U. S. 474; *Pederson* v. *Railway,* 229 U. S. 146; *Southern Ry.* v. *United States,* 222 U. S. 27.

The car was not under the Act because it had been withdrawn from all service for several weeks.

The car was not under the Safety Appliance Act because it was not being used at the time in any character of commerce, but was being taken from the railroad yard into the shops to be repaired. *Ill. Cent. Ry.* v. *Behrens,* 233 U. S. 474; Rev. Stats. Texas, 1911, Art. 6581; *Southern Ry.* v. *Snyder,* 205 Fed. Rep. 870; Safety Act, 1910, § 2.

Defendant in error was not under the protection of the Safety Appliance Act because he was not at the time engaged in interstate commerce. *Boyle* v. *Penn. Ry.,* 221

Fed. Rep. 455; *Del., Lack. & West. R. R.* v. *Yerkomis,* U. S. Sup. Court; *Howard* v. *Ill. Cent. R. R.,* 207 U. S. 490; *Ill. Cent. R. R.* v. *Behrens,* 233 U. S. 474; *Mondou* v. *N. Y. & N. H. Ry.,* 223 U. S. 51; *Pederson* v. *Del., Lack. & West. R. R.,* 229 U. S. 146.

Defendant in error was not under the protection of the Safety Appliance Act because at the time he was injured he was not coupling nor uncoupling cars. Bishop, Non-contract Law, 446; *The Eugene F. Moran,* 212 U. S. 472; *Howard* v. *Ill. Cent. R. R.,* 207 U. S. 490; *Mondou* v. *N. Y. & N. H. Ry.,* 223 U. S. 51; Potter's Dwarris Stat. 128, 140; Sherman & Redfield on Negligence, § 8; Safety Appliance Act, 1893, § 4; *Williams* v. *Chicago & Alton R. R.,* 135 Illinois, 491.

There was no common-law negligence giving defendant in error a right to recover damages. *Flanagan* v. *C. & N. W. Ry.,* 45 Wisconsin, 98; *S. C.,* 50 Wisconsin, 462; *Watson* v. *H. & T. C. Ry.,* 58 Texas, 439.

*Mr. S. P. Jones* for defendant in error:

Car from which defendant in error fell was in use on an interstate highway, and the injury was caused by a defective safety appliance. *Delk* v. *St. L. & S. F. Ry.,* 220 U. S. 580; *N. C. & H. R. Ry.* v. *Carr,* 238 U. S. 260; *Johnson* v. *Sou. Pac. Ry.,* 196 U. S. 13; *Southern Ry.* v. *United States,* 222 U. S. 23.

The Safety Appliance Law gives a cause of action to employees injured by defects while car is in use on an interstate highway, though the employee is not engaged at the time in interstate commerce. *Southern Ry.* v. *United States,* 222 U. S. 23; *United States* v. *C., B. & Q. Ry.,* 237 U. S. 410; *United States* v. *Erie Ry.,* 237 U. S. 402.

Under Texas Safety Appliance Laws, or independent of safety appliance laws, the defendant in error was entitled to an instructed verdict. Texas Safety App. Laws, Gen. Laws, 1909, p. 64.

MR. JUSTICE PITNEY delivered the opinion of the court.

The defendant in error, Rigsby, while in the employ of plaintiff in error as a switchman in its yard at Marshall, Texas, was engaged, with others of the yard crew, in taking some "bad order" cars to the shops there to be repaired. The switch engine and crew went upon a spur track, hauled out three cars, and switched them upon the main line, intending to go back upon the spur track for others, to be taken with the three to the shops, which were on the opposite side of the main line from the spur track. Rigsby, in the course of his duties, rode upon the top of one of the cars (a box car) in order to set the brakes and stop them and hold them upon the main line. He did this, and while descending from the car to return to the spur track he fell, owing to a defect in one of the handholds or grab-irons that formed the rungs of the ladder, and sustained personal injuries. This car had been out of service and waiting on the track spur for some days, perhaps a month. The occurrence took place September 4, 1912. In an action for damages, based upon the Federal Safety Appliance Acts,[1] the above facts appeared without dispute, and it was admitted that the main line of defendant's railroad was in daily use for the passage of freight and passenger trains in interstate commerce. The trial court instructed the jury, as matter of law, that they should return a verdict in favor of plaintiff, the only question submitted to them being the amount of the damages. The Railway Company excepted to this charge, and requested certain specific instructions based upon the theory that the car was out of service and marked "bad order," which was notice to Rigsby of its condition; that there was no evidence that the condition of the car had resulted from any

---

[1] Act of March 2, 1893, c. 196; 27 Stat. 531; amendatory act of March 2, 1903, c. 976; 32 Stat. 943; supplementary act of April 14, 1910, c. 160; 36 Stat. 298.

negligence of defendant; that it was at the time being taken to the shop for repairs; and that for these reasons plaintiff could not recover. The instructions were refused, and exceptions taken. The resulting judgment was affirmed by the Circuit Court of Appeals. 222 Fed. Rep. 221.

It is insisted that Rigsby was not within the protection of the Act because he was not coupling or uncoupling cars at the time he was injured. The reference is to § 4 of the act of March 2, 1893, which requires "secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars." This action was not based upon that provision, however, but upon § 2 of the amendment of 1910, which declares: "All cars must be equipped with secure sill steps and efficient hand brakes; all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards, and all cars having ladders shall also be equipped with secure handholds or grab irons on their roofs at the tops of such ladders." There can be no question that a box car having a handbrake operated from the roof requires also a secure ladder to enable the employee to safely ascend and descend, and that the provision quoted was intended for the especial protection of employees engaged in duties such as that which plaintiff was performing.

It is earnestly insisted that Rigsby was not under the protection of the Safety Appliance Acts because at the time he was injured he was not engaged in interstate commerce. By § 1 of the 1903 amendment its provisions and requirements and those of the act of 1893 were made to apply "to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce . . . and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith," subject to an exception not now pertinent. And by § 5 of the 1910 amendment the provisions of the previous acts

were made to apply to that act, with a qualification that
does not affect the present case. In *Southern Ry* v. *United
States*, 222 U. S. 20, which was an action to recover penal-
ties for a violation of the Acts with respect to cars some
of which were moved in intrastate traffic and not in connec-
tion with any car or cars used in interstate commerce, but
upon a railroad which was a part of a through highway for
interstate traffic, it was held that the 1903 amendment
enlarged the scope of the original Act so as to embrace all
cars used on any railway that is a highway of interstate
commerce, whether the particular cars are at the time
employed in such commerce or not. The question whether
the legislation as thus construed was within the power of
Congress under the commerce clause, was answered in
the affirmative, the court saying (p. 27): "Speaking only
of railroads which are highways of both interstate and
intrastate commerce, these things are of common knowl-
edge: Both classes of traffic are at times carried in the
same car and when this is not the case the cars in which
they are carried are frequently commingled in the same
train and in the switching and other movements at ter-
minals. Cars are seldom set apart for exclusive use in
moving either class of traffic, but generally are used inter-
changeably in moving both; and the situation is much the
same with trainmen, switchmen and like employees, for
they usually, if not necessarily, have to do with both
classes of traffic. Besides, the several trains on the same
railroad are not independent in point of movement and
safety, but are inter-dependent, for whatever brings delay
or disaster to one, or results in disabling one of its oper-
atives, is calculated to impede the progress and imperil
the safety of other trains. And so the absence of appro-
priate safety appliances from any part of any train is a
menace not only to that train but to others."

It is argued that the authority of that case goes no
further than to sustain the penal provisions of the Act,

and does not uphold a right of action by an employee injured through a violation of its provisions, unless he was engaged in interstate commerce. That the scope of the legislation is broad enough to include all employees thus injured, irrespective of the character of the commerce in which they are engaged, is plain. The title of the Act, repeated in that of each supplement, is general: "An act to promote the safety of employees and travelers," etc.; and in the proviso to § 4 of the supplement of 1910 there is a reservation as to "liability in any remedial action for the death or injury of any railroad employee." None of the Acts, indeed, contains express language conferring a right of action for the death or injury of an employee; but the safety of employees and travelers is their principal object, and the right of private action by an injured employee, even without the Employers' Liability Act, has never been doubted. (See *Johnson v. Southern Pacific Co.*, 196 U. S. 1; *Schlemmer v. Buffalo, Rochester &c. Ry.*, 205 U. S. 1, 8; 220 U. S. 590, 592; *St. Louis & Iron Mountain Ry.* v. *Taylor*, 210 U. S. 281, 284, 295; *Delk v. St. Louis & San Francisco R. R.*, 220 U. S. 580; *Cleveland &c. Ry.* v. *Baker*, 91 Fed. Rep. 224; *Denver & R. G. R. R.* v. *Arrighi*, 129 Fed. Rep. 347; *Chicago &c. Ry.* v. *Voelker*, 129 Fed. Rep. 522; *Chicago Junction Ry.* v. *King*, 169 Fed. Rep. 372.) A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Com. Dig., *tit.* Action upon Statute (F), in these words: "So, in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law." (*Per* Holt, C. J., *Anon.*, 6 Mod. 26, 27.) This is but an application of the maxim,

*Ubi jus ibi remedium.* See 3 Black. Com. 51, 123; *Couch v. Steel,* 3 El. & Bl. 402, 411; 23 L. J. Q. B. 121, 125. The inference of a private right of action in the present instance is rendered irresistible by the provision of § 8 of the Act of 1893 that an employee injured by any car, etc., in use contrary to the act shall not be deemed to have assumed the risk, and by the language above cited from the proviso in § 4 of the 1910 act.

Plaintiff's injury was directly attributable to a defect in an appliance which by the 1910 amendment was required to be secure, and the Act must therefore be deemed to create a liability in his favor, unless it be beyond the power of Congress under the commerce clause of the Constitution to create such a liability in favor of one not employed in interstate commerce. In *Ill. Cent. R. R.* v. *Behrens,* 233 U. S. 473, 477, the court said, *arguendo,* with reference to this topic: "Considering the status of the railroad as a highway for both interstate and intrastate commerce, the interdependence of the two classes of traffic in point of movement and safety, the practical difficulty in separating or dividing the general work of the switching crew, and the nature and extent of the power confided to Congress by the commerce clause of the Constitution, we entertain no doubt that the liability of the carrier for injuries suffered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce." Judicial expressions in previous cases were referred to, and the decision in *Employers' Liability Cases,* 207 U. S. 463, was distinguished because the act of June 11, 1906, there pronounced invalid, attempted to regulate the liability of every carrier in interstate commerce for any injury to any employee, even though his employment had no relation whatever to interstate commerce.

The doing of plaintiff's work, and his security while doing it, cannot be said to have been wholly unrelated to the safety of the main track as a highway of interstate commerce; for a failure to set the brakes so as temporarily to hold the "bad order" cars in place on that track would have been obviously dangerous to through traffic; while an injury to the brakeman had a tendency to cause delay in clearing the main line for such traffic. Perhaps upon the mere ground of the relation of his work to the immediate safety of the main track plaintiff's right of action might be sustained.

But we are unwilling to place the decision upon so narrow a ground, because we are convinced that there is no constitutional obstacle in the way of giving to the Act in its remedial aspect as broad an application as was accorded to its penal provisions in *Southern Railway* v. *United States, supra.* In addition to what has been quoted from the opinions in that case and the *Behrens Case,* the following considerations are pertinent. In the exercise of its plenary power to regulate commerce between the States, Congress has deemed it proper, for the protection of employees and travelers, to require certain safety appliances to be installed upon railroad cars used upon a highway of interstate commerce, irrespective of the use made of any particular car at any particular time. Congress having entered this field of regulation, it follows from the paramount character of its authority that state regulation of the subject-matter is excluded. *Southern Ry.* v. *R. R. Comm., Indiana,* 236 U. S. 439. Without the express leave of Congress, it is not possible, while the Federal legislation stands, for the States to make or enforce inconsistent laws giving redress for injuries to workmen or travelers occasioned by the absence or insecurity of such safety devices, any more than laws prescribing the character of the appliances that shall be maintained, or imposing penalties for failure to maintain them; for the conse-

quences that shall follow a breach of the law are vital and
integral to its effect as a regulation of conduct, liability to
private suit is or may be as potent a deterrent as liability
to public prosecution, and in this respect there is no dis-
tinction dependent upon whether the suitor was injured
while employed or traveling in one kind of commerce
rather than the other. Hence, while it may be conceded,
for the purposes of the argument, that the mere question
of compensation to persons injured in intrastate com-
merce is of no concern to Congress, it must be held that
the liability of interstate carriers to pay such compensa-
tion because of their disregard of regulations established
primarily for safeguarding commerce between the States,
is a matter within the control of Congress; for unless per-
sons injured in intrastate commerce are to be excluded
from the benefit of a remedial action that is provided for
persons similarly injured in interstate commerce—a dis-
crimination certainly not required by anything in the
Constitution—remedial actions in behalf of intrastate
employees and travelers must either be governed by the
acts of Congress or else be left subject to regulation by
the several States, with probable differences in the law
material to its effect as regulatory of the conduct of the
carrier. We are therefore brought to the conclusion that
the right of private action by an employee injured while
engaged in duties unconnected with interstate commerce,
but injured through a defect in a safety appliance re-
quired by the act of Congress to be made secure, has so
intimate a relation to the operation of the Act as a regula-
tion of commerce between the States that it is within the
constitutional grant of authority over that subject.

It is argued that the statute does not apply except
where the car is in use in transportation at the time of
the injury to the employee, and that since it does not
appear that the car in question was in bad order because
of any negligence on the part of the railway company,

and it was being taken to the shop for repairs at the time of the accident, there is no liability for injuries to an employee who had notice of its bad condition and was engaged in the very duty of taking it to the shop. This is sufficiently answered by our recent decision in *Great Northern Ry.* v. *Otos*, 239 U. S. 349, 351, where it was pointed out that although § 4 of the act of 1910 relieves the carrier from the statutory penalties while a car is being hauled to the nearest available point for repairs, it expressly provides that it shall not be construed to relieve a carrier from liability in a remedial action for the death or injury of an employee caused by or in connection with the movement of a car with defective equipment. The question whether the defective condition of the ladder was due to defendant's negligence is immaterial, since the statute imposes an absolute and unqualified duty to maintain the appliance in secure condition. *St. Louis & Iron Mountain Ry.* v. *Taylor*, 210 U. S. 281, 294, 295; *Chicago, B. & Q. Ry.* v. *United States*, 220 U. S. 559, 575; *Delk* v. *St. Louis & San Francisco R. R.*, 220 U. S. 580, 586.

Of course, the employee's knowledge of the defect does not bar his suit, for by § 8 of the Act of 1893 an employee injured by any car in use contrary to the provisions of the act is not to be deemed to have assumed the risk, although continuing in the employment of the carrier after the unlawful use of the car has been brought to his knowledge; and by § 5 of the Act of 1910 the provisions of the 1893 act are made applicable to it, with a qualification that does not affect remedial actions by employees

The Circuit Court of Appeals correctly disposed of the case, and its judgment is

*Affirmed.*