TEXAS & P. RY. CO. v. LESTER.
(No. 2008.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 7, 1918. Rehearing Denied Nov. 14, 1918.)

1. COMMERCE ☞27 (6)—EMPLOYER'S LIABILITY — SERVANT ENGAGED IN "INTERSTATE COMMERCE."

A brakeman on an interstate train, injured while respotting local cars, which were necessarily dislocated when his train had to take a siding, was engaged in "interstate commerce," within the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. COMMERCE ☞27(6)—INJURY TO EMPLOYÉ— FEDERAL SAFETY APPLIANCE LAW.

A brakeman, injured by defective coupler of a car of an interstate railway company, is within the protection of the federal Safety Appliance Law (U. S. Comp. St. § 8606), though not at the time engaged in interstate service.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by J. M. Lester against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

F. H. Prendergast, of Marshall, for appellant.

T. W. Davidson and Y. D. Harrison, both of Marshall, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee, Lester, for the sum of $14,000 as damages for personal injuries. The appellant was at the time of the injury operating a line of railroad running from points in Louisiana to points in Texas and which did both an interstate and an intrastate business. Lester was employed as a brakeman on a freight train, and was injured in the state of Louisiana under the following circumstances: The train to which he was attached arrived at Glocester, La., going west, and, in obedience to orders, had taken a side track to permit the passage of another train going in the opposite direction. Standing on the side track at Glocester were 18 or 20 other cars, some of which had been "spotted" for the purpose of being loaded. The length of Lester's train was such that it was necessary to move those "spotted" cars in order to clear the main line. After the east-bound train had passed, it was the duty apparently of the train crew to which Lester belonged to "respot" the cars which had been moved. In performing that service Lester mounted one of the "spotted" cars in order to set the brakes when it arrived at the proper place. The loose cars were incorporated in the train and were pulled in a westerly direction, going slightly upgrade. After proceeding a short distance, the car immediately behind the caboose of the freight train became detached, which, it is claimed, resulted from a defective coupler. By the time the train reached a point where it should be stopped, a considerable space had intervened between the detached cars and the caboose. Lester claims that he had not observed the separation of the cars; that when he thought the correct location had been reached he gave the signal for the engineer to stop. This was obeyed, and the train brought quickly to a standstill; but the detached cars continued to roll on toward the caboose, and finally struck it with such violence that Lester was thrown to the ground and sustained the injuries for which he sued. According to his testimony, at the

time of the collision he was at the front end of the car and was attempting to set the brake.

It is conceded that the train to which Lester was attached was at the time bound for a point in Texas, and was made up of cars used for both interstate and intrastate traffic. The negligence relied on was the presence of a defective coupler on one of the cars standing on the side track at Glocester, which caused it to become detached when the train crew were engaged in "respotting" them.

[1, 2] The case was submitted to a jury upon the theory that the appellant's train was at the time of the injury engaged in interstate commerce, and liability, if any, was to be measured by the common-law rule of compensation. Counsel for the appellant insists that, while the train to which Lester belonged was in a general way engaged in interstate commerce, yet at the time the injury occurred Lester was performing a service purely intrastate and local, and for that reason the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. §§ 8657-8665]) had no application; that liability, if any, was to be measured by the Workmen's Compensation Law of the state of Louisiana (Act No. 20 of 1914). While it is true that the car which it is claimed was equipped with a defective coupler and also those which the train crew were attempting to replace in proper position were intended for purely local traffic, yet it does not follow that Lester was not engaged in doing something for the furtherance of interstate commerce. It was necessary for his train to take the siding at Glocester, and in doing this the dislocation of the cars which had been "spotted" became apparently unavoidable. To restore those cars to their original positions seems to have been an incidental and proper duty. In performing that duty it was necessary to incorporate them in the train and pull them a short distance. It has been held that a brakeman connected with an interstate train, who is injured while attempting to set the brakes on a car set out at a station and used only in intrastate traffic, is nevertheless engaged in interstate commerce within the meaning of the federal statute. N. Y. C. & H. Ry. Co. v. Carr, 238 U. S. 260, 35 Sup. Ct. 780, 59 L. Ed. 1298. The principle discussed in the case referred to should, we think, control here. But, conceding that Lester was not at the time engaged in an interstate service, his injury resulted from a violation of the federal Safety Appliance Law (Act Cong. March 2, 1893, c. 196, § 2, 27 Stat. 531 [U. S. Comp. St. § 8606]), and his right of action would be governed practically by the same rule, even though his service was in furtherance of purely local traffic. T. & P.

Ry. Co. v. Rigsby, 241 U. S. 38, 36 Sup. Ct. 482, 60 L. Ed. 874; L. & N. Ry. Co. v. Layton, 243 U. S. 617, 37 Sup. Ct. 456, 61 L. Ed. 931.

The court's charge on contributory negligence was substantially as specific as was necessary to present the facts upon which that defense was predicated, and there was no error in refusing the special charge requested by the appellant.

It is also contended that the defective coupler was not the proximate cause of the injury. The appellant's evidence tended to show that the coupler was not in fact defective; that the side track where the train was moved was very uneven; and the argument is made that its rough condition, and not a defect in the coupler, caused the cars to separate. The court submitted that issue to the jury, and directed them to return a verdict for the appellant in the event it was found that the rough track, and not a defective condition of the coupler, caused the separation. The verdict of the jury involves the finding against the appellant's contention, and the state of the evidence is not such as to require us to set that finding aside. According to the evidence offered by the appellee, his injuries were both painful and serious, and we cannot say that the verdict is excessive.

The judgment is affirmed.