## Miller v. Reading Company.

*Negligence—Federal Safety Appliance Act—Federal Employers' Liability Act—Workmen's Compensation Act—Jurisdiction—Railroads.*

1. Where Congress has created a liability for damages for injury or death resulting from violation of the Safety Appliance Act, no state legislature can alter or impair the Federal right by passing compensation acts, and it is immaterial whether the injured employee was at the moment engaged in interstate or intrastate commerce if the employer carrier was engaged in interstate commerce.

2. Where an employee of a railroad company which is engaged in interstate commerce is injured by a defective appliance while he is engaged in an intrastate employment, his remedy is under the Federal Safety Appliance Act, and not under the State Compensation Act.

3. In such a case, the injured employee may proceed in the State court to enforce the provisions of the Federal Safety Appliance Act, but he cannot proceed under the State Compensation Act.

Motion for judgment *n. o. v.* C. P. No. 2, Phila. Co., June T., 1926, No. 14520.

*Robert M. Bernstein*, for plaintiff; *William Clarke Mason*, for defendant.

Lewis, J., May 4, 1927.—The plaintiff brought this action of trespass to recover damages for the loss of his leg while engaged in uncoupling two of defendant's cars in the Port Richmond Yard, Philadelphia. In his statement of claim, he pleaded the Federal Employers' Liability Act and also the Federal Safety Appliance Act.

It was practically conceded at the trial that interstate employment of the plaintiff at the time of the accident was not shown, and we do not understand that the contrary is now contended. It appears that when trains arrived at the receiving yard of the Port Richmond Branch, they were turned over to the yard crews, were then broken up and distributed. The plaintiff Miller was a member of one of the yard crews, and the particular train with which we are concerned comprised twenty-six cars of coal, all of which, according to the testimony, came from points within Pennsylvania. The train was divided up, so that first there were twenty-two cars and finally five. These five cars were clearly identified at the trial as being consigned, one to the Pennsylvania Coal and Coke Company and four to the Philadelphia Electric Company at Port Richmond. The testimony indicates that the cars consigned to the Philadelphia Electric Company had reached their destination, but we cannot say from the record whether that was also true concerning the fifth car.

A plaintiff can recover under the Federal Employers' Liability Act only when it appears that he was engaged in interstate commerce at the time of the accident: Texas & Pacific Ry. Co. *v.* Rigsby, 241 U. S. 33; Minnesota & St. Paul Ry. Co. *v.* Popplar, 237 U. S. 369; Smith *v.* Phila. & Reading Ry. Co., 288 Pa. 250; Sims *v.* Pennsylvania R. R. Co., 279 Pa. 111, 117. If he was engaged in interstate employment, his remedy is under that act (Bauchspies *v.* Central R. R. of N. J., 287 Pa. 590), and if his action is based upon that statute alone, he will, of course, be non-suited if he does not prove the interstate character of his work at the time of the accident, and if his duties are such as can be split into separate acts of inter- and intrastate employment: Konsoute *v.* Pennsylvania R. R. Co., 287 Pa. 302.

Plaintiff's rights here, therefore, must necessarily depend upon the Safety Appliance Act, for it has been held and is established that this statute, as amended, embraces all locomotives and cars used on any railway that is a highway of interstate commerce, and that the employee injured as a result of a violation of the act need not himself have been engaged in interstate com-

merce; the theory invoked to support these decisions is that, under the commerce clause, the power of Congress is plenary and competent to require all vehicles moving on highways of interstate commerce to be so equipped as to avoid danger to persons moving in interstate commerce: Southern Ry. Co. *v.* United States, 222 U. S. 20; Texas & Pacific Ry. Co. *v.* Rigsby, 241 U. S. 33; San Antonio, etc., Ry. Co. *v.* Wagner, 241 U. S. 476; Sims *v.* Pennsylvania R. R. Co., 279 Pa. 111; Devine *v.* Buffalo, etc., Ry. Co., 253 Fed. Repr. 948 (C. C. A., 3rd Cir., 1918). This has been carried to the extreme of application to a railroad situated wholly within the State of Pennsylvania if it does both kinds of business: McMahon *v.* Montour R. R. Co., 283 Pa. 274, as reversed in 270 U. S. 628. The defendant corporation is within the decisions cited.

Having established that plaintiff's rights are dependent upon the Safety Appliance Act, we come to the contention of the defendant upon this motion for judgment notwithstanding the verdict of $10,000 in plaintiff's favor. Briefly stated, it is to the effect that, although the safety appliance statutes have created a cause of action, in that if they are violated the offending carrier is presumed to be guilty of negligence and the defence of assumption of risk is barred, yet where it appears that the employee was engaged in intrastate commerce, his remedy for enforcing that cause of action is by application to the Workmen's Compensation Board.

So far as we can find, this is the first occasion on which this point has been raised in a court of this State, although there are decisions both ways in the Federal courts, as we shall show. The Federal statute under consideration does not, it is urged, fix the amount of recovery and does not provide the forum in which the right of action should be enforced. It was shown at the trial, as a basis for the argument now made, that no rejection of the Pennsylvania Workmen's Compensation Act was ever filed by plaintiff or defendant; the terms of the act were, accordingly, part of the contract of employment: Liberato *v.* Royer & Herr, 81 Pa. Superior Ct. 403, 281 Pa. 227; Anderson *v.* Carnegie Steel Co., 255 Pa. 33. If the plaintiff's injury had been occasioned by something other than a defective coupler, he would be compelled under his contract to look to the Compensation Board. Is the situation entirely different because of the Act of Congress?

The title of the Safety Appliance Act, repeated in that of each supplement, reads: "An act to promote the safety of employees and travelers, etc." It makes unlawful the use on the road of a common carrier engaged in interstate commerce of any car not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of the cars. By section 4 of the Amendment of April 14, 1910, 36 Stat. at L. 299, a penalty for each violation is provided, following which are several provisos, including, "and nothing in this section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused . . . by reason of . . . equipment . . . not maintained in accordance with the requirements of this act. . . . ."

It is now not open to question that the act, while containing no express language conferring it, gave a right of private action by an injured employee under application of the maxim *ubi jus ibi remedium:* Texas & Pacific Ry. Co. *v.* Rigsby, 241 U. S. 33.

The point really presented, then, is whether the State Compensation Acts have superseded or can supersede the right of action for damages which the employee undoubtedly had theretofore if his injury resulted from a violation of the Federal act, or whether such acts have modified that right of action to

the extent of providing that he may recover only according to the schedule established by the various legislatures.

The language of Mr. Justice Pitney in the Rigsby case (241 U. S. 33), already cited several times, would appear to furnish a clear answer in the negative. He said: "In the exercise of its plenary power to regulate commerce between the states, Congress has deemed it proper, for the protection of employees and travelers, to require certain safety appliances to be installed upon railroad cars used upon a highway of interstate commerce, irrespective of the use made of any particular car at any particular time. Congress having entered this field of regulation, it follows from the paramount character of its authority that state regulation of the subject-matter is excluded: Southern Ry. Co. v. Railroad Commission, Indiana, 236 U. S. 439. Without the express leave of Congress, it is not possible, while the Federal legislation stands, for the states to make or enforce inconsistent laws giving redress for injuries to workmen or travelers occasioned by the absence or insecurity of such safety devices any more than laws prescribing the character of the appliances that shall be maintained, or imposing penalties for failure to maintain them; for the consequences that shall follow a breach of the law are vital and integral to its effect as a regulation of conduct, liability to private suit is or may be as potent a deterrent as liability to public prosecution, and in this respect there is no distinction dependent upon whether the suitor was injured while employed or traveling in one kind of commerce rather than the other. Hence, while it may be conceded, for the purposes of the argument, that the mere question of compensation to persons injured in intrastate commerce is of no concern to Congress, it must be held that the liability of interstate carriers to pay such compensation because of their disregard of regulations established primarily for safeguarding commerce between the states is a matter within the control of Congress; for unless persons injured in intrastate commerce are to be excluded from the benefit of a remedial action that is provided for persons similarly injured in interstate commerce—a discrimination certainly not required by anything in the Constitution—remedial actions in behalf of intrastate employees and travelers must either be governed by the Acts of Congress or else be left subject to regulation by the several states, with probable differences in the law material to its effect as regulatory of the conduct of the carrier. We are, therefore, brought to the conclusion that the right of private action by an employee injured while engaged in duties unconnected with interstate commerce, but injured through a defect in a safety appliance required by the Act of Congress to be made secure, has so intimate a relation to the operation of the act as a regulation of commerce between the states that it is within the constitutional grant of authority over that subject."

The only case precisely in point cited to us is Delaware, etc., Ry. Co. v. Peck, 255 Fed. Repr. 261, and it is true the Circuit Court of Appeals for the Second Circuit there held that the Federal court was without jurisdiction over an action based upon the Safety Appliance Act brought by an employee hurt while in intrastate commerce and that the remedy was under the State Compensation Act. Ward, C. J., said: "The plaintiff's employment and injury both took place in the State of New Jersey. His theory is that for injuries resulting from a violation of this act he may recover damages in a common-law action brought wherever he can serve the defendant. But master and servant together constitute a relation or status which involves many mutual rights and duties not expressed in the specific contract of employment. That contract fixes, among other things, the kind, place and time of employment and the compensation. The definition and extent of the relation itself are

Miller *v.* Reading Company.

fixed by the law of the state where it was established, but Congress has written into it, in the case of railroad companies and their employees, this additional feature on which the plaintiff relies. The State of New Jersey has defined the rights and duties of the relation of master and servant by the Workmen's Compensation Act . . . which we regard as excluding all other jurisdictions."

The weakness of this citation, however, is that Judge Manton, of the same circuit, who was not on the Bench when it was decided, seized the opportunity in Director General of Railroads *v.* Ronald, 265 Fed. Repr. 138, to repudiate it, saying, in a concurring opinion: "The result there is irreconcilable with pronouncements of the Supreme Court and the result reached in other circuits to which I have called attention, and should, therefore, not be followed."

In Ross *v.* Schooley, 257 Fed. Repr. 290 (C. C. A. 7th Cir., 1919), it was said:

"Inasmuch as the Congress has created the liability for damages for injury or death resulting from violation of the Safety Appliance Act, no state legislature can alter or impair the Federal right by passing compensation acts.

"It is immaterial whether the injured employee was at the moment engaged in interstate or intrastate commerce, because the congressional power that was called into play was the power to prescribe the equipment of interstate carriers for the protection of all persons upon such roads, both employees and travelers, regardless of their participation in interstate commerce. A state legislature, therefore, has no more power to curtail the Federal right of an employee than of a traveler.

"What effect a state compensation law has upon the right, under the Safety Appliance Act, of an employee who was injured through defective appliances while coupling intrastate cars on an interstate railroad, has not been directly involved in any case in the Supreme Court cited by counsel or found by us. But our conclusion, which rejects a result that would make the operativeness of the act dependent upon the legislative wills of the several states and which aligns that act with the Employers' Liability Act in substantive and procedural effect, is supported by our understanding of (numerous cases cited)."

An application for a writ of *certiorari* was denied in the above case by the Supreme Court: 249 U. S. 615.

There is much to be said on the other side. We have before us one who was engaged in intrastate commerce at the time of the accident. That is an occupation over which, in the ordinary case, Congress has no power such as it possesses with regard to interstate employment. It is without doubt proper that Congress should be conceded the power to legislate regarding some intrastate matters which are so intimately connected with interstate commerce as to be almost indistinguishable from it. But beyond what is necessary to protect interstate transportation by requiring that certain standards must be met even in intrastate haulings, Federal legislation should not go. A principle sometimes overlooked is that the powers of a state over all intrastate business and transportation are as broad and as all-inclusive as the control of Congress over interstate transportation: 1 Roberts, Federal Liabilities of Carriers, § 22.

The Safety Appliance Act by its express terms affected the relation between railroads and employees in intrastate matters in one respect only—it created a cause of action in favor of an employee who receives an injury due to the failure of his railroad employer to observe the requirements of the act. This has been recognized by the United States Supreme Court, for in Minnesota & St. Paul Ry. Co. *v.* Popplar, 237 U. S. 369, 372, which was a case brought under the Safety Appliance Act and one in which the employee was not engaged in interstate commerce, it was said: "The action fell within the

Miller *v.* Reading Company.

familiar category of cases involving the duty of a master to his servant. This duty is defined by the common law, except as it may be modified by legislation. The Federal statute, in the present case, touched the duty of the master at a single point, and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the state."

This was repeated by Mr. Justice Walling in Sims *v.* Pennsylvania R. R. Co., 279 Pa. 111, 116: "Cases, however, growing out of intrastate traffic are governed by state laws, except as modified by the Federal Safety Appliance Acts: Minneapolis, etc., Ry. Co. *v.* Popplar, *supra;* 1 Roberts, Federal Liabilities of Carriers, 1288."

As indicating that there is warrant for viewing the application of the Safety Appliance Act differently, depending on whether interstate or intrastate employment is involved, attention may be directed to the fact that in the former situation the Federal statute of limitation controls, while in the latter the state statute governs: 2 Roberts, Federal Liabilities of Carriers, §§ 884 and 885; Nichols *v.* Chesapeake & Ohio R. R. Co., 195 Fed. Repr. 913.

It was said in Campbell *v.* Haverhill, 155 U. S. 610: "The truth is that statutes of limitations affect the remedy only, and do not impair the right, and that the settled policy of Congress has been to permit rights created by its statutes to be enforced in the manner and subject to the limitations prescribed by the laws of the several states."

It is argued with force that the State Workmen's Compensation Act likewise affects the remedy and does not impair the right of action created by the Federal act. It will no doubt be said that if the State has the power to limit the amount of recovery, it has the power, also, to provide that the parties, employer and employee, may, by contract, waive the right to collect damages. The Compensation Act does not have such an aim; it is, rather, an act containing much that is highly advantageous to the employee; and, were the questions still open, we would incline to the view that no valid reason exists why the Compensation Act of Pennsylvania should not apply to an employee injured as a result of a violation of the Safety Appliance Act while engaged in intrastate employment.

However, the scope and intent of the decisions of the Federal courts are such that we must consider the question here raised as ruled against defendant. We, therefore, overrule the motion for judgment *n. o. v.*

## Supplemental opinion.

LEWIS, J., Sept. 15, 1927.—Our attention has been called to another position of the defendant to which no direct reference was made in our former opinion. Inasmuch as this position will, we are advised, be made the basis of a substantial part of the argument upon appeal, we deem it expedient to state briefly our views concerning it.

Assuming that Congress has the right or power to create a cause of action for violation of the Safety Appliance Act which a plaintiff may assert, even though it arose while he was in intrastate service, this is a cause of action which he must go to the Federal courts to enforce. So far as the State tribunals are concerned, the legislature has, in the Workmen's Compensation Act, taken from the Common Pleas Courts jurisdiction to hear a case such as the plaintiff herein has presented, and has placed it in the first instance in the Compensation Board. In other words, an employee of an interstate carrier injured as a result of a violation of the Safety Appliance Act while engaged in intrastate commerce is put to his election between an action in

the Federal court and presenting his claim to the Workmen's Compensation Board. Thus argues counsel for the defendant.

In 2 Roberts's Federal Liabilities of Carriers, § 877, we find the following: "The enforcement of rights under the Safety Appliance Act in personal injury actions is not restricted to the Federal courts. The state courts must always hold themselves open for the prosecution of civil rights growing out of the laws of the United States."

4 Elliott on Railroads (3rd ed.), § 2000, reads: "The state courts as well as Federal courts have jurisdiction over actions for personal injuries caused by violation of the Federal Safety Appliance Acts, and they must take judicial knowledge of such statutes and apply them in a proper case."

It is conceded that our courts have entertained jurisdiction of such cases since the passage of the Compensation Act (Sims v. Pennsylvania R. R. Co., 279 Pa. 111), but it is pointed out that the question raised here was not argued there. The argument now made, however, is by no means novel or new. It has had to be answered from an early date. Thus, the Supreme Court of the United States said many years ago (Clalin v. Houseman, 93 U. S. 130, 136, 137): "The laws of the United States are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent and, within its jurisdiction, paramount sovereignty. . . . If an Act of Congress gives a penalty (meaning civil and remedial) to a party aggrieved, without specifying a remely for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some Act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent. . . . But this is no reason why the state courts should not be open for the prosecution of rights growing out of the laws of the United States, to which their jurisdiction is competent and not denied."

Mr. Justice Shiras, in Murray v. Chicago & N. W. Ry. Co., 62 Fed. Repr. 24, pointed out that: "The courts of the states are constantly called upon to hear and decide cases arising under the Federal Constitution and laws, just as the courts of the United States are called upon to hear and decide cases arising under the law of the state when the adverse parties are citizens of different states. The duty of the court is to explain, apply and enforce the existing law in the particular cases brought before them. If the law applicable to a given case is of Federal origin, the legislature of the state cannot abrogate or change it, but the courts of the state may apply and enforce it. . . ."

In more recent years the Federal Supreme Court has considered "whether rights arising under the Congressional Act (Federal Employers' Liability Act) may be enforced, as of right, in the courts of the states," and decided they were: Second Employers' Liability Cases, 223 U. S. 1. "The suggestion that the Act of Congress is not in harmony with the policy of the state (respecting the liability of employers to employees for injuries received by the latter while in the service of the former), and, therefore, that the courts

Miller *v.* Reading Company.

of the state are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the states, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the state" (page 57).

Answering a similar argument as here made, Mr. Chief Justice White wrote in Minneapolis, etc., R. R. *v.* Bombolis, 241 U. S. 211, 221: "Moreover, the proposition is in conflict with an essential principle upon which our dual constitutional system of government rests; that is, that lawful rights of the citizen, whether arising from a legitimate exercise of state or national power, unless excepted by express constitutional limitation or by valid legislation to the effect, are concurrently subject to be enforced in the courts of the state or nation when such rights come within the general scope of the jurisdiction conferred upon such courts by the authority, state or nation, creating them."

But, aside from the foregoing, we disagree with the very premise upon which the defendant's argument is founded. There is nothing in the Workmen's Compensation Act which shows that the legislature intended to attempt to deprive the Common Pleas Courts of jurisdiction of a case arising under the Safety Appliance Acts. True, section 1 says it " shall apply to all accidents occurring within this Commonwealth," but there is no more reason to believe that such language necessarily was intended to compel employees having a cause of action under the Federal Act to assert it before the board, if they wish a state tribunal, than to suppose it was intended to apply in cases of accidents occurring in Pennsylvania in the course of interstate commerce. We're we so to construe the act, with its limitations upon the amount to be recovered, it would manifestly be in abrogation or modification of the Federal statute on a subject-matter over which Congress has plenary power— as much so as is the case of interstate commerce.

It follows logically and unmistakably from our former opinion, and we now definitely state that it is our view, that the plaintiff was within his rights in instituting suit in this court.