## TEETERS et al. v. HENTON et al.

### No. 1956.

District Court, D. Wyoming.
July 10, 1930.

A. C. Allen, of Riverton, Wyo., for plaintiffs.

John Dillon, of Cheyenne, Wyo., for defendants.

KENNEDY, District Judge.

This is a suit in equity in which the plaintiffs seek relief in the matter of restraining defendants from permitting horses to graze upon certain lands held by said plaintiffs under permits from the Department of the Interior, United States Indian Service. Some of the defendants through counsel have ap- peared and by motion to dismiss have raised, among other defenses, the question of the jurisdiction of this court of the subject-matter of the suit. If it should appear that the court has no jurisdiction, it would obviate the necessity of considering other points raised, and therefore the jurisdictional question will be first taken up.

Without attempting to analyze the bill in detail, for the purposes of discussing the jurisdiction of this court, the gist of the averments are substantially as follows: That the defendants are residents of the United States and of Fremont and Hot Springs counties in the state of Wyoming; that the Shoshone or Wind River Indian Reservation was established by treaty with the Indians and subsequently ratified by the Senate of the United States, a description of which reservation is set forth; that the Secretary of the Interior through the Commissioner of Indian Affairs promulgated certain rules in regard to the use of said reservation for the Indians in the matter of ranging their live stock upon the lands included within its boundaries; that said reservation is under the immediate control of the agent of said Indian reservation, together with the issuance of permits to persons other than Indians, giving said persons authority to range live stock upon said reservation for a consideration; that the plaintiffs hold permits for such grazing covering an acreage in excess of 1,200,000 acres and that said permittees are using said lands under said permits for the grazing of their flocks and herds; that the defendants are permitting large numbers of horses to enter upon said lands held under said permits and to graze upon the lands thereby depleting the pasture to the detriment of the plaintiffs; that such trespass is resulting in a great and irreparable damage to the plaintiffs as permittees; that said horses have been permitted to run at large for so long a period of time that many of them have become wild and are of no value except for slaughtering for commercial purposes, in which the cost of gathering will be equal or greater than the actual value of said horses for any purpose; that the wrongful acts of the defendants in the premises amount to a nuisance; that no provision has been made by the government for the policing and guarding of said permits; that the Indian agent is unable to afford permittees relief in the premises; and that the plaintiffs have no adequate remedy at law because relief in actions at law could only be obtained by a multiplicity of suits and that many of said defendants are financially irresponsible.

■ The question is: Has this court jurisdiction in the premises? Manifestly the jurisdiction cannot be based upon a diversity of citizenship, as there is no allegation that the plaintiffs are nonresidents of the state of Wyoming, and in fact it is frankly admitted that the greater number of them are like the defendants residents of this state and judicial district. Counsel for plaintiffs, in responding to the attack made upon the court's jurisdiction, assert that the jurisdiction is based upon the presence of a federal question. The United States District Court being one of statutory jurisdiction, it has only such powers and prerogatives as may be delegated to it by the Congress. Its general jurisdiction, so far as the point involved here is concerned, is found in title 28, section 41, of the USCA, which reads:

"Section 41. (Judicial Code, section 24, amended.) *Original jurisdiction.* The district courts shall have original jurisdiction as follows:

"(1) *United States as plaintiff; civil suits at common law or in equity.* First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same State claiming lands under grants from different States; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens, or subjects."

The question as to whether or not a controversy arises under the Constitution or laws of the United States or treaties made is one which the federal courts, both high and low, have been generous in its treatment. The general principle of the rule which should be applied when a point is raised that the controversy arises under the Constitution and laws or treaties, has been ennunciated many times and has not greatly varied in the long line of decisions. The greater difficulty seems to have arisen in the matter of the application of the rule to the facts in the individual case. Selecting one of these many pronouncements, we find in the case of Kansas Pacific Railroad v. Atchison, Topeka & Santa Fe Railroad, 112 U. S. 414, at page 416, 5 S. Ct. 208, 209, 28 L. Ed. 794, this language:

"As far back as Cohens v. Virginia, 6 Wheat. 264, 379 [5 L. Ed. 257], decided more than 60 years ago, it was said that a case may be considered to arise under the constitution or a law of the United States whenever its correct decision depends upon the construction of either. The same thing is expressed by the statement that a case arises under the Constitution or laws of the United States whenever the rights set up by a party may be defeated by one construction or sustained by the opposite construction. Osborn v. Bank of the United States, 9 Wheat. 738 [6 L. Ed. 204]."

An examination of the bill of complaint in the first place lacks any affirmative allegation or showing from which it may be anticipated that the rights set up by the plaintiffs in this case may be either defeated or sustained by the construction which the court may give of any federal law. In fact, the bill upon its face suggests that the determination of the suit cannot depend upon the construction of such a law. If, as alleged in the bill, the defendants are trespassers or engaged in the commission of a nuisance, certainly they do not have, nor could they have under the theory of plaintiffs' bill, any rights in the matter either in contesting plaintiffs' permits or the laws under which those permits came into existence. Counsel for plaintiffs have cited many cases, but none of them seems to touch the point here presented. They strongly rely upon the case of Lancaster v. Kathleen Oil Co., 241 U. S. 551, 36 S. Ct. 711, 60 L. Ed. 1161. But a glance at that case shows plainly that while it concerns Indian lands, the issue there involved is entirely different from that tendered by plaintiffs' bill. A brief excerpt from the opinion very clearly shows that the determination of the controversy depended upon a construction of an act of Congress and the authority of the Secretary of the Interior. On page 555 of 241 U. S., 36 S. Ct. 711, 712, of that case, an excerpt from the court's opinion reads as follows:

"Such relief, it is apparent, could be granted only after determining the rights of the parties under their respective leases, which would require a construction of the act of Congress, referred to as well as a decision concerning the authority of the Secretary of the Interior in approving the defendant company's lease, and the effect to be given to such approval."

■ It may be conceded that the United States in the matter of protecting the permittees or on behalf of its Indian wards would have full power and authority to maintain a suit of this character, and it might

even be considered the duty of the government to protect its permittees, but such an analysis would not bring the suit within the jurisdiction of this court, where no diversity of citizenship exists and where no possible construction, as I view it, of a federal law or an act of a government official thereunder could possibly be considered as defeating or sustaining the rights of the plaintiffs in the premises.

[3] In addition, I have failed to discover any allegation in the bill as to the sum or value of the matter in controversy. Even where a federal question is involved the matter in dispute must exceed the jurisdictional limitation prescribed by statute. Lindeberg v. Doverspike (C. C. A.) 141 F. 59.

For the reasons stated, the motion of defendants to dismiss will be sustained, and an order and decree entered dismissing the cause at plaintiffs' costs, reserving to plaintiffs proper exceptions.