664 F.2d 1148
 COMMUNITY PSYCHIATRIC CENTERS OF OREGON, INC., an Oregon
corporation, Plaintiff-Appellee and Cross-Appellant,
v.
Richard H. GRANT, individually and as Administrator of the
State Health Planning and Development Agency of
the State of Oregon, Defendant-Appellant,
and
Sisters of Providence in Oregon, Inc. dba St. Vincent
Hospital and Medical Center, an Oregon nonprofit
corporation, Defendant-Cross-Appellee.
 Nos. 80-3357, 80-3365.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 14, 1981.
Decided Dec. 28, 1981.
 
 Michael D. Williams, Williams, Hiefield, Norville & Griffin, P.C., Portland, Or., Hartly Fleischmann, Fleischmann & Farber, San Francisco, Cal., argued, for Community Psychiatric Centers; Seymour Farber, San Francisco, Cal., on brief.
 Kathleen G. Dahlin, Asst. Atty. Gen., Salem, Or., J. Barrett Marks, Portland, Or., argued, for Grant; Miller, Nash, Yerke, Wiener & Hager, Portland, Or., on brief.
 Appeal from the United States District Court for the District of Oregon.
 Before MERRILL and TANG, Circuit Judges, and VAN PELT*, District Judge.
 MERRILL, Circuit Judge.
 
 
 1
 This case involves construction of the National Health Planning & Resources Development Act of 1974, 42 U.S.C. § 300k et seq. The question presented is whether that Act grants to a provider of hospital services an implied private right of action against another provider to prevent the latter from offering new institutional health services until it has, as prescribed by the Act, obtained the state certificate that there is a need for such services. We hold that there is no such right of action.
 
 
 2
 The Act at the outset makes its purpose clear. In its first subsection, § 300k(a), certain legislative findings are made. It is stated in part:
 
 
 3
 (a) The Congress makes the following findings:
 
 
 4
 (1) The achievement of equal access to quality health care at a reasonable cost is a priority of the Federal Government.
 
 
 5
 (2) The massive infusion of Federal funds into the existing health care system has contributed to inflationary increases in the cost of health care and failed to produce an adequate supply or distribution of health resources, and consequently has not made possible equal access for everyone to such resources.
 
 
 6
 (4) Increases in the cost of health care, particularly of hospital stays, have been uncontrollable and inflationary, and there are presently inadequate incentives for the use of appropriate alternative levels of health care, and for the substitution of ambulatory and intermediate care for inpatient hospital care.
 
 Section 300k(b) states:
 
 7
 In recognition of the magnitude of the problems described in subsection (a) of this section and the urgency placed on their solution, it is the purpose of this Act to facilitate the development of recommendations for a national health planning policy, to augment areawide and State planning for health services, manpower, and facilities, and to authorize financial assistance for the development of resources to further that policy.
 
 
 8
 The Act provides in § 300l-4(b)(4) for areawide "health systems agencies" to be designated by the Secretary of Health and Human Services to oversee and assist state agencies in planning and in the operation of state health programs. It provides in § 300m(a) for the designation of "state health planning and development agencies" by agreement between the Secretary and the governor of each state. It provides in § 300m-1 for the establishment of state programs by the state agencies which must meet certain standards and be approved by the Secretary and, in § 300m-2 specifies certain functions to be performed by the state agencies. It provides for grants to both areawide, § 300l-5, and state, § 300m-4(a), agencies to apply upon their costs of operation. See generally National Gerimedical Hospital and Gerontology Center v. Blue Cross of Kansas City, --- U.S. ----, ---- - ----, 101 S.Ct. 2415, 2418-2421, 69 L.Ed.2d 89 (1981).
 
 
 9
 Among the specified functions of the state agencies is to:
 
 
 10
 (A)dminister a state certificate of need program which applies to the obligation of capital expenditures within the State and the offering within the State of new institutional health services and the acquisition of major medical equipment and which is consistent with standards established by the Secretary by regulation. A certificate of need program shall provide for procedures and penalties to enforce the requirements of the program. In performing its functions under this paragraph the State Agency shall consider recommendations made by health systems agencies under section 300l-2(f) of this title.
 
 
 11
 § 300m-2(a)(4)(B) (emphasis supplied).
 
 
 12
 The purpose of this specification may be inferred from language in § 300k-2(b) (1):
 
 
 13
 The Congress finds that the effect of competition on decisions of providers respecting the supply of health services and facilities is diminished. The primary source of the lessening of such effect is the prevailing methods of paying for health services by public and private health insurers, particularly for inpatient health services and other institutional health services. As a result, there is duplication and excess supply of certain health services and facilities, particularly in the case of inpatient health services.
 
 
 14
 As the Supreme Court noted in National Gerimedical Hospital, supra, Congress was concerned "that marketplace forces in this industry failed to produce efficient investment in facilities and to minimize the costs of health care." 101 S.Ct. at 2420.
 
 
 15
 In 1977, Oregon's Legislature by statute enacted a program designed to meet the standards set forth in the Act and by the Secretary. 1977 Or.Laws ch. 751, Or.Rev.Stat. § 442.015 et seq. The statute modified the state's existing certificate of need program and created a State Health Planning and Development Agency (SHPDA) and delegated to it the duty of administering the state program. The agency and the program have received the conditional approval of the Secretary.
 
 
 16
 Community Psychiatric Centers of Oregon, Inc. (CPC) operates the Cedar Hills Psychiatric Hospital, a for-profit institution. St. Vincent Hospital and Medical Center is a not-for-profit general hospital controlled by the religious order of Sisters of Providence. Appellant Richard H. Grant is the administrator of SHPDA.
 
 
 17
 In 1979, St. Vincent began to consolidate into a single 28-bed unit its inpatient psychiatric services which had been scattered throughout the hospital. On July 17, 1979, CPC commenced this action against St. Vincent and SHPDA seeking to prohibit St. Vincent from proceeding with development of its new unit until it had obtained a certificate of need from SHPDA, and also seeking to require Grant to conduct a certificate of need proceeding with reference to St. Vincent. The District Court dismissed the action as to St. Vincent for lack of jurisdiction. Grant sought to have the court dismiss the action against him on the ground that the Act did not create a private right of action in CPC. His motion was denied. On July 31, 1980, the court held that St. Vincent's reorganization and expansion of psychiatric services constituted the offering of a "new institutional health service" under the Act and entered a final order requiring SHPDA to "institute a certificate of need review process as expeditiously as possible." Grant filed a timely notice of appeal and CPC cross-appealed from the order dismissing St. Vincent.
 
 
 18
 The Act does not expressly create a right of action in CPC. The only question we need reach is whether an implied private right of action was created. We hold that it was not.
 
 
 19
 In Cort v. Ash, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), the Court stated:
 
 
 20
 In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted.' Texas & Pacific R. Co. v. Rigsby, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)-that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? ...
 
 
 21
 Many cases subsequent to Cort have discussed the Cort factors. In one of the most recent, California v. Sierra Club, --- U.S. ----, ----, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981), the Court stated:
 
 
 22
 Cases subsequent to Cort have explained that the ultimate issue is whether Congress intended to create a private right of action ...; but the four factors specified in Cort remain the 'criteria through which this intent could be discerned.' Davis v. Passman, 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979) ....
 
 
 23
 In holding that a private right of action had been created in favor of CPC, the district court reasoned that the Act benefitted providers of hospital services. However, in California v. Sierra Club, supra, the Court stated:
 
 
 24
 The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries.
 
 
 25
 101 S.Ct. at 1779. See also Texas Industries, Inc. v. Radcliff Materials, --- U.S. ----, ----, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981).
 
 
 26
 In specifying that a certificate of need program should be inaugurated as to new institutional health services, Congress clearly did not intend to create a private right of action in favor of competing providers of such services. Congress was not concerned with the harm that a competitor might suffer by the entry of a new provider into the market where there was no actual need for its services. Rather, Congress was concerned with the rising costs of hospital care and the trend toward the practice of supplying unnecessary service.[1] A provider, then, was not one of the class for whose "especial benefit"[2] the statute or its certificate of need provisions were enacted. If the Act can be said to have been passed for the benefit of any particular class (a question we do not reach), it would seem to have been for the benefit of consumers of hospital services and their insurers.
 
 
 27
 CPC points to the following Congressional finding in § 300k(a)(5):
 
 
 28
 Since the health care provider is one of the most important participants in any health care delivery system, health policy must address the legitimate needs and concerns of the provider if it is to achieve meaningful results; and, thus, it is imperative that the provider be encouraged to play an active role in developing health policy at all levels.
 
 
 29
 CPC reasons from this that Congress intended to create a private right of action in the provider. We cannot agree. The cited finding does indicate Congress's intent that providers play an active role in the development of health policy. The Act provides, for example, that providers shall comprise a substantial proportion of the membership of the health system agencies. 42 U.S.C. § 300l(b)(3)(C)(ii). However, while the legitimate needs and concerns of the provider must be addressed in order that providers may play an active role in accomplishing the Act's purposes and while it might be argued that a private right of action could aid the provider in playing such a role, this does not make the provider an especial beneficiary. Rather he is one of those depended upon to bring the benefits of the Act to others, who are the Act's true beneficiaries.[3]
 
 
 30
 We conclude that CPC was not one of the class for whose especial benefit the Act was passed and that there is no indication of legislative intent to create a private right of action. For these reasons the Act does not confer upon CPC an implied private right of action, and we need not consider the other Cort factors. We need not deal with the other contentions of appellant Grant,[4] nor with the question whether the district court had jurisdiction over St. Vincent.
 
 
 31
 Judgment against Grant is reversed.
 
 
 32
 Judgment in favor of St. Vincent is affirmed for the reasons set forth above.
 
 
 
 *
 Honorable Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 The Senate Report on the Act states:
 The need for strengthened and coordinated planning for personal health services is growing more apparent each day. In the view of the Committee the health care industry does not respond to classic marketplace forces. The highly technical nature of medical services together with the growth of third party reimbursement mechanisms act to attenuate the usual forces influencing the behavior of consumers with respect to personal health services. For the most part, the doctor makes purchasing decisions on behalf of the patient and the services are frequently reimbursed under health insurance programs, thus reducing the patient's immediate incentive to contain expenditures.
 Investment in costly health care resources, such as hospital beds, coronary care units or radio-isotope treatment centers is frequently made without regard to the existence of similar facilities or equipment already operating in an area. Investment in costly facilities and equipment not only results in capital accumulation, but establishes an ongoing demand for payment to support those services. There is convincing evidence from many sources that overbuilding of facilities has occurred in many areas, and that maldistribution of high cost services exists.
 S.Rep. No. 93-1285, 93d Cong., 2d Sess. 39, reprinted in (1974) U.S.Code Cong. & Ad.News 7842, 7878.
 
 
 [2]
 We note that the Cort opinion quoted this language from an earlier opinion but significantly chose to lend new emphasis to the word "especial."
 
 
 [3]
 Further, although Congress valued provider participation in health planning, the Act was partly designed to counteract what Congress perceived to be the "disproportionate influence" of health providers upon health planning decisions. See S.Rep. No. 93-1285, 93d Cong., 2d Sess. 46, reprinted in (1974) U.S.Code Cong. & Ad.News 7842, 7885. It would be surprising if Congress meant to accomplish this aim by giving providers a cause of action under the Act
 
 
 [4]
 Among other contentions, Grant asserts that no federal question is presented, and that the certificate of need program is a state program established by state law