Francisco **GALINDO**, Jr., et al.,
**Plaintiffs,**

v.

**DEL MONTE CORPORATION, a foreign corporation, Defendant.**

**No. 73 C 51.**

United States District Court,
N. D. Illinois.

Sept. 30, 1974.

Bruce L. Goldsmith, Chicago, Ill., for plaintiffs.

Melvin Mensor, San Francisco, Cal., Henry E. Seyfarth, Gerald D. Skoning and Raymond J. Kelly, Jr. of Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes before the Court on defendant's motion to dismiss plaintiffs' amended complaint and for summary judgment.

This case involves a series of alleged contractual, statutory and constitutional breaches committed by Del Monte Corporation ("Del Monte"). Plaintiffs are migrant agricultural workers recruited by Del Monte for employment in their home states of Texas, Arkansas and Kentucky by the defendant through the Federal Interstate Recruitment System. This system was established pursuant to the authority of the Wagner-Peyser Act of 1933.[1]

The system is composed of participating state employment services acting in conjunction with the U.S. Department of Labor (DOL). In order to utilize the free services of the system an employer like defendant prepares a "clearance order" for a number of workers, stipulating the rate of pay, hours of work, and other terms and conditions of employment.

This clearance order is reviewed by the state employment service and the regional offices of the DOL. In the case of agricultural workers, the order must meet the requirements of 20 C.F.R. § 602.9. These requirements include the

---

1. 29 U.S.C. § 49 et seq.

following: (1) that wage rates are not less than the rate "prevailing" in the area of employment, (2) that housing provided by the employer meets the sanitation standards of 20 C.F.R. § 620, (3) that transportation arrangements from the workers' homes to the employer are no less favorable than those in the area of employment, and (4) that all other terms and conditions of employment meet the "prevailing" test.

Del Monte submitted four clearance orders to the Illinois State Employment Service (ISES) prior to the 1973 harvest season. ISES and the regional DOL office approved these orders and transmitted them to labor supply state employment service offices for the recruitment of workers.

Plaintiffs contend that the relevant terms and conditions of employment contained in these orders were: (1) job positions as packing plant workers or tractor drivers; (2) workers "will be expected to work up to 15 hours per day or 70 hours or more per week. Average hours worked on a seasonal basis is 50 to 55 hours per week. Crop, weather conditions and/or labor supply available may alter this average and result in fewer or more hours per week." (3) "Deductions for all advances will not be in excess of those permitted under the Fair Labor Standards Act and other statutes."

Plaintiffs were recruited pursuant to these clearance orders in employment service offices in Kentucky, Arkansas and Texas. Plaintiffs Hemphill, Hooks, Jones and Thorbes claim by way of affidavit they were specifically offered tractor driver jobs under clearance order V–Ill–12. The other plaintiffs allegedly were offered in-plant work. Supposedly all plaintiffs were told at the time of recruitment by either employment service personnel or other agents of defendant that work would begin immediately upon plaintiffs' arrival at defendant's plants in Illinois.

Defendant advanced to plaintiffs the cost of transportation to Illinois. Plaintiffs left their homes and traveled to defendant's plants.

Upon arriving at defendant's plants, plaintiffs found little or no work. Plaintiffs Martinez, Ramirez and Fernandez received no work. Plaintiffs Hemphill, Hooks, Jones and Thorbes were never given the probation period as tractor drivers. Instead, they claim they received infrequent employment as in-plant workers, a lower-paying position, or no work at all. The other plaintiffs found themselves in the same position. Those plaintiffs who did receive work had large deductions taken from their paychecks to satisfy their debts. The deductions left many of the plaintiffs with small or negative paychecks. Part of the plaintiffs' claim is that these deductions were made without plaintiffs' executing valid wage assignments or being subject to wage deduction orders. They argue that this system, by forcing plaintiffs into debt, and then requiring plaintiffs to work off the debt before plaintiffs could leave defendant's employ, constitutes peonage (Count III). And that defendant used this system to maintain a reserve labor pool for peak work periods.

As to the wages paid, plaintiffs contend that they were often below the federal minimum wage. Thus, defendant allegedly violated the Fair Labor Standards Act (Count V).

Plaintiffs originally filed suit in July of 1973 seeking emergency injunctive relief against Del Monte, the Illinois Department of Labor, and the United States Department of Labor, and their respective administrative heads. After extensive hearings on July 25, 27 and 30 of 1973 on plaintiffs' request for a temporary restraining order, Judge McMillen refused to enter such an order, but urged the parties to reach agreement on future recruitment activities under the approved clearance orders. On August 13, 1973, the plaintiffs and all defendants filed a detailed stipulation representing the satisfactory resolution of the matters with respect to which the plaintiffs had sought injunctive relief.

There remained plaintiffs' request for declaratory and monetary relief.

On August 21, 1973 defendant Del Monte filed its motion to dismiss the complaint for equitable, declaratory, monetary and other relief, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on the grounds that the Court lacked subject matter jurisdiction and that the complaint failed to set forth a claim upon which relief could be granted. This motion was fully briefed by the parties pursuant to Local Rule 13. On December 17, 1973, the Illinois Department of Labor and United States Department of Labor, and their respective administrative heads, were dismissed from the lawsuit by virtue of stipulations entered with the plaintiffs whereby those defendants agreed to process interstate clearance orders in a specified manner (see U.S. Department of Labor letter of November 30, 1973 and Illinois Department of Labor Stipulation of December 17, 1973).

On December 27, 1973, this Court granted defendant Del Monte's motion to dismiss. Thereafter plaintiffs filed an amended complaint on January 24, 1974.

## I. PLAINTIFFS HAVE STATED A PROPER CAUSE OF ACTION UNDER THE WAGNER-PEYSER ACT.

Plaintiffs seek to enforce their rights under the Wagner-Peyser Act of 1933 [2] and the regulations promulgated by the Secretary of Labor pursuant to the Act.[3]

---

2. Although the Wagner-Peyser Act has not been subject to extensive litigation its purpose is quite clear. Chief Judge Brown explained the Act in Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969), as follows:

"The employment system involved here does not supply only agricultural workers but workers in all areas. It is an interstate system that operates through local, State-controlled offices that are subject to the regulations of the Secretary of Labor and that receive applications for work and workers and make a series of attempts in wider and wider areas to fill the applications.

The system was established in 1933 when Congress passed the Wagner-Peyser Act, which established the United States Employment Service as a bureau of the Department of Labor. The Act's basic objective was to establish an interstate system for the recruiting and transfer of labor. The Act, quite obviously, was also intended to offer some protection to those employees who shift about the country to meet the needs of those employers who voluntarily use the resources of the federal government to secure workers.

These objectives were to be accomplished through that well-known device of 'cooperative federalism', and grant-in-aid system. Under the particular system established by the Act, the state agencies, which are substantially funded by federal money and are subject to the regulations of the Secretary of Labor, process applications for workers and, after concentric local searches to fill the application, send the request through the interstate facilities of the United States Employment Service. Because of its information about the supply of labor in all parts of the country, the Service then is able to forward the application— 'Clearance Order'—to a state agency that can fill the request.

In 1951, reflecting the growing national concern about the deplorable condition of any migratory Americans, usually Negroes or Mexican-Americans, who harvest the food for the nation's tables, the Secretary of Labor first promulgated referral standards for farm workers. ' (16 F.R. 9142). The standards, as those that followed, were obviously designed to protect those workers that were acquired when farmers voluntarily sought the benefits of this federal system" (footnotes omitted).

3. 20 C.F.R. § 602 et seq. The regulations provide, *inter alia*:

"No order for recruitment of domestic agricultural workers shall be placed into interstate clearance unless:

(a) The State agency has established, pursuant to recruitment efforts made in accordance with regulations, policies and procedures of the Bureau of Employment Security (United States Employment Service), that domestic agricultural workers are not available locally or within the State.

(b) The State agency has compiled and examined data on the estimated crop acreage, yield and other production factors in accordance with procedures established by the Bureau of Employment Security (United States Employment Service) to assure the validity of need and the minimum number of agricultural workers required.

Surprisingly, in the 41 years since enactment of the statute there has been but a handful of cases in which the Wagner-Peyser Act was the jurisdictional basis. Plaintiffs contend that the Act authorizes an implied federal cause of action by private parties. In support they cite Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969) which also involved a claim by migrant workers who sought relief when they were deprived of adequate wages, facilities, and working conditions.

As Chief Judge Brown pointed out in *Gomez* (supra), the "implication of a private civil remedy was first recognized by the Supreme Court in 1916 in Texas & Pacific Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874." In *Rigsby*, the Supreme Court stated:

"[D]isregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose special benefit the statute was enacted, the right to recover the damages from the party in default is implied. . . ."

This interpretation has been applied to many regulatory statutes and has been invoked quite often in the federal courts. See, Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963) and footnote #1 in Farmland Indus. Inc. v. Kansas-Nebraska Nat. Gas Co. Inc., 349 F.Supp. 670 (D.C.Neb.1972) at 678 (Natural Gas Act); Dovis v. Romney, 355 F.Supp. 29 (E.D.Pa.1973) (jurisdiction under National Housing Act as to rights but not money damages); Cook v. Ochsner Foundation Hospital, 319 F.Supp. 603 (E.D.La.1970) (construing the Hill-Burton Act); New York City Coalition for Community Health v. Lindsay, 362 F.Supp. 434 (1973) (Public Health Service Act); Yanez v. Jones, 361 F.Supp. 701 (D.C.Utah 1973) (Social Security Act). What is clear from these cases is that on more than one occasion federal courts have stated that a civil remedy may be implied from statutes on regulations which make no mention of a right to bring suit. And, that, when it can be fairly stated that Congress intended to benefit a particular class in its statutory scheme, a civil remedy will be implied for such beneficiaries.

Defendant Del Monte submits that plaintiff's second amended complaint fails to establish a jurisdictional basis for this action under 28 U.S.C. § 1337 because the Wagner-Peyser Act upon which jurisdiction depends, "does not and was not intended to create a private right of action in individual migrant worker", citing Chavez v. Freshpict Foods, Inc., 456 F.2d 890 (10th Cir. 1972) and 27 Puerto Rican Migrant Farm Workers v. Shade Tobacco Growers, 352 F.Supp. 986 (D.Conn.1973). However, those cases involved claims brought pursuant to the Civil Rights Statutes and the Immigration and Nationality Act, thus, they are not controlling in this action.

---

(c) The State agency has ascertained that wages offered are not less than the wages prevailing in the area of employment among similarly employed domestic agricultural workers recruited within the State and not less that those prevailing in the area of employment among similarly employed domestic agricultural workers recruited outside the State.

\* \* \* \* \*

(e) The State agency has ascertained that the employer has offered to provide or pay for transportation for domestic agricultural workers (1) at terms not less favorable to the workers than those prevailing among the domestic agricultural workers in the area of employment recruited from the area of supply; or (2) in the absence of such prevailing practice in the area of employment, at terms not less favorable to the workers than those which prevail among the domestic agricultural workers recruited by out-of-State employers who recruit domestic agricultural workers from the area of supply, as determined by the State Agency in the State requested to supply the workers.

(f) The State agency has ascertained that other terms and conditions of employment offered are not less favorable than those prevailing in the area of employment for domestic agricultural workers for similar work."

Defendant has also brought to the Court's attention the fact that the cause of action alleged in the *Gomez* case differs from the case at hand. In *Gomez* ". . ., they found that the wages were lower than those called for in the regulations and the housing was woefully inadequate and far below the requirements that should have been met ·before the request or 'Clearance Order' had been processed. The list of grievances is long: There was no electricity in most cabins. None of the cabins had running water and there were no working toilets. There were no facilities for garbage pick-up or disposal. There was no access to drinking water. There were no workable showers. And none of the cabins had any heat at all." (Footnotes omitted) 417 F.2d at 573, 574.

In the present case the plaintiffs alleged over-recruitment, failure to provide work consistent with representations made in order to make the migrant workers travel 1,500 miles to the job site, wage deductions which created a system of peonage and failure to pay a minimum wage. Defendant allegedly committed these acts while participating in a recruiting system of the state employment services acting in conjunction with the U.S. Department of Labor, thus breaching the employment contracts governed by the Wagner-Peyser Act.

Clearly there are significant factual distinctions between this case and *Gomez*. Yet the Court believes that the same rationale and interpretation that motivated the *Gomez* decision also applies in this factual setting. As the Court stated:

"This Act, its setting and the regulations call imperatively for implied remedies here if the purpose of the regulations—the protection of migratory farm workers—is to be achieved. Experience provided the need for more and stringent standards. Standards were stated and stated in terms relating to workers, their pay and conditions of living and transportation. Who, more than the workers, would be the expected beneficiaries of them? What more effective way will there be to eradicate conditions so deplored? . . . What better way will there be to eliminate the problem of poor workers responding to "Clearance Orders", journeying hundreds of miles across the country to accept work and the advantage of the benefits promised by the laws of the United States only to find that the promise is a fraud? Absent an implied remedy, the workers have no protection. They would not have even the protection of a criminal sanction. And, civil suits under local concepts hardly meet these conditions.

It is unthinking that Congress, obviously concerned with people, would have left the Secretary with only the sanction of cutting off funds to the state. Moreover, the private civil remedy is a method of policy enforcement long honored explicitly in statutes and by implication with the help of courts. Congress more and more commits to individuals, acting as a private Attorney General, the effectuation of public rights through relief to individuals. See Pettway v. American Cast Iron Pipe Co., 5 Cir., 1969, 411 F.2d 998; Jenkins v. United Gas Corp., 5 Cir. 1968, 400 F.2d 28. (Cases under Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e–3(a))."

 Thus, it is the opinion of this Court that Count I of plaintiffs' amended complaint states a valid cause of action under the Wagner-Peyser Act. However, the Court does not express any opinion as to the merit of the claim under the Act.

Count II of the amended complaint is based on 42 U.S.C. § 1983 claiming state action because the defendant private employer participated in the joint federal and state recruitment system. In light of the Court's finding of jurisdiction under the Act, it reserves judgment on the § 1983 claim. Count III alleges jurisdiction under 42 U.S.C. § 1994 and 28 U.S.C. §§ 2201 and 2202, and seeks re-

covery from injuries supposedly caused by defendant's depriving them of their "constitutionally guaranteed right to freedom from the bonds of peonage." The Court also reserves ruling on this question. Count IV has been omitted. Counts V–VII are really all dependent on the Court's pendant jurisdiction and allege no new jurisdictional basis.

## II. PLAINTIFFS HAVE MADE AN INITIAL SHOWING THAT THIS CASE MEETS THE REQUIREMENTS FOR A CLASS ACTION UNDER RULE 23.

In support of their motion to dismiss defendant has asserted a number of other arguments. The Court will consider each one individually.

First, defendant states that the amended complaint does not allege a valid class action under Rule 23 of the Federal Rules of Civil Procedure. In order for a class action to be the proper mechanism for adjudicating a controversy the following requirements of Rule 23(a) all must be satisfied:

1. The class must be so numerous that joinder of all members would be impracticable.
2. There must be questions of law or fact common to the class.
3. The claims or defenses of the representative parties must be typical of the claims or defenses of the class.
4. The representative parties must fairly and adequately protect the interests of the class.

In addition it is clear that one of the provisions of Rule 23(b) must be satisfied. The appropriate test is stated in section 23(b)(3) which provides:

"(3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

It is the opinion of this Court that plaintiffs have made an initial showing that there are questions of law and fact which are common to members of the class which predominate over any question affecting only individual members. The amended complaint outlines the class as:

". . . non-white migrant agricultural workers recruited by Defendant Del Monte Corporation to work in Illinois during the 1973 harvesting and packing season, pursuant to Interstate Clearance Orders I–ILL–11, 12, 15, and 20; who accepted an offer of employment from Defendant Del Monte Corporation; who in reliance on verbal and written representations about the terms and conditions of this employment, traveled to Defendant's Illinois plants to work; and who, upon arriving at Defendant Del Monte Corporation's plants, were not provided with employment consistent with the terms and conditions of employment Defendant Del Monte Corporation offered to them at the time of their recruitment, and received less than 50 hours of work per week. . . ."

Each plaintiff or member of the alleged class may have been affected differently by the defendant's action. However, that question cannot be determined at this stage of the litigation. The initial prerequisites have been met by plaintiffs' pleadings. The amended complaint shows the existence of a class whose bounds are somewhat narrowly drawn. Weiss v. Tenny Corporation, 47 F.R.D. 283 (S.D.N.Y.1969); Dolgow v.

Anderson, 43 F.R.D. 472 (E.D.N.Y. 1969); Philadelphia Electric Company v. Anaconda Brass Company, 43 F.R.D. 452 (E.D.Pa.1968); Williams v. Page, 60 F.R.D. 29 (N.D.Ill.1973). The adequacy of the named plaintiffs' representation depends upon whether the interests of the representative parties are co-extensive with the interests of the class and upon whether the representative parties and their attorney can be expected to prosecute the action vigorously thus satisfying Rule 23(a)(4). Consequently, the Court feels that any definitive ruling on whether the action is to proceed as a class would be premature. But it is clear that the amended complaint should not be dismissed upon the basis that the requirements of Rule 23 have not been fulfilled. There appear to be no manageability problems or technical defects on the face of the complaint as to the class allegations.

Secondly defendant argues that this action is barred for failure to exhaust administrative remedies. In support of this argument defendant points out that remedies were available under the mandatory arbitration provisions of the collective bargaining agreement. Yet, plaintiffs are asserting federal rights apart from the collective bargaining agreement. They allege that they are not here seeking wages under the collective bargaining agreement, but, rather, under separate contractual rights governed by federal law. A party is not always required to exhaust a grievance procedure when a federal right is at issue. U. S. Bulk Carriers v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971); Iowa Beef Packers v. Thompson, 405 U.S. 228, 92 S.Ct. 859, 31 L.Ed.2d 165 (1972). Since the collective bargaining agreement is not controlling the union is not necessarily an indispensable party to this action.

Thirdly, defendant moves for a dismissal of Count V which asserts claims for unpaid minimum wages allegedly due under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. The right to bring such suits under FLSA is subject to two conditions under the Portal-to Portal Act, 29 U.S.C. § 256. (1) The employee, in order to become a party plaintiff must give his consent in writing; (2) the written consent must be filed with the Court. Plaintiffs have made a tardy filing after the defendant raised this objection. The Court sees no reason why this late filing should cause dismissal. The basic purpose of filing has been accomplished. Counts VI and VII are brought pursuant to this Court's pendant jurisdiction. Since plaintiffs have established an independent basis of federal jurisdiction in Count I these additional counts will be allowed to remain.

The Court also has before it two other motions by the defendant, a motion for summary judgment, and, a motion for a protective order against plaintiffs' request for production of documents or in the alternative to stay discovery.

Plaintiffs' amended complaint is premised in large part on the claim that defendant Del Monte breached an implied contractual obligation (allegedly arising from federal statutes and the clearance orders in question) to provide plaintiff a certain amount of work during the 1973 harvest season. There is a serious question of fact as to: whether there exists a legally valid contract; whether there was a breach of the alleged agreement; whether the Wagner-Peyser Act was violated. It has been well settled by the Seventh Circuit and courts across the country, in ruling on a motion for summary judgment the court must construe the evidence in its most favorable light in favor of the non-moving party. As stated in Mantoux v. Gulling Auto Electric, 295 F.2d 573 (7th Cir. 1961) at 576:

> "If upon the proofs adduced in support of a motion for summary judgment, any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied."

As to the discovery motion, the defendant's main objection was that it should not be forced to involve itself in the discovery process until the jurisdictional question was determined. Now that the Court has made an initial determination on the jurisdictional issue discovery should proceed as normal under the rules.

Accordingly, defendant's discovery motion, summary judgment motion, and motion to dismiss the amended complaint are hereby denied.