David VAZQUEZ, Individually and on behalf of all others similarly situated, Plaintiff,

Asociacion De Trabajadores Agricolas de Puerto Rico et al., Intervenors,

v.

Luis A. FERRE, Individually and in his capacity as Governor of the Commonwealth of Puerto Rico, and his successor in office, et al., Defendants.

Civ. No. 2023-72.

United States District Court, D. New Jersey.

Nov. 19, 1975.

Herbert Teitelbaum and Manuel del Valle, Puerto Rican Legal Defense and Education Fund, Inc., New York City, Michael S. Berger, Camden Regional Legal Services, Inc., Bridgeton, N. J., for plaintiff.

David M. Sheehan, Amherst, Mass., D. Ellen Stimler, Moorestown, N. J., for intervenors.

I. Leo Motiuk, Deputy Atty. Gen. of N. J., Trenton, N. J., for defendants Heymann and the N. J. Dept. of Labor and Industry.

Norman L. Cantor, Newark, N. J., George A. Davidson, Hughes, Hubbard & Reed, New York City, for defendants Ferre, Rivera de Vincenti, Lugo, their successors in office and the Dept. of Labor of the Com. of Puerto Rico.

## OPINION

COHEN, Senior District Judge:

Judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), is sought by the following defendants: Department of Labor of the Commonwealth of Puerto Rico; Luis A. Ferre, Governor of Puerto Rico; his successor in office; Julia Rivera De Vincenti, Secretary of Labor of Puerto Rico; her successor in office; Nick Lugo, Jr., Director of the Migration Division of the Department of Labor of Puerto Rico; and his successor in office (hereinafter referred to as the commonwealth defendants). The remaining defendants are present and former officials and governmental departments of the State of New Jersey. Plaintiff, David Vazquez, is a migratory farmworker from Puerto Rico, who began employment in 1972 with Columbia Fruit Farms. This corporation is a member of the Glassboro Service Association, an association of New Jersey farmers. Plaintiff seeks to represent all others similarly situated.[1] Two other individuals and an association of farmworkers have been permitted to intervene.

The complaint sets forth essentially three causes of action against the commonwealth defendants. First, it is alleged that the government officials and the Department of Labor of the Commonwealth of Puerto Rico have breached duties imposed on them by the Wagner-Peyser Act, 29 U.S.C. § 49 *et seq.* (1970) and by regulations promulgated by the United States Secretary of Labor, 20 F.R.C. § 620 (1975). The Act and regulations govern the interstate clearance system of the United States Training and Employment Service and establish minimum housing conditions to be maintained by employers who participate in this program. Jurisdiction is based on 28 U.S.C. § 1337, inasmuch as the cause of action arises under an Act of Congress regulating commerce. Further, plaintiff contends that the commonwealth defendants, under color of

1. The complaint states that the plaintiff brings this suit on his own behalf and as a class action. He seeks to include in the class all Puerto Rican migrant farmworkers who were or will be recruited and employed for migrant farmwork in the State of New Jersey pursuant to the Wagner-Peyser Act, 29 U.S.C. §§ 49 *et seq.* and who have been or will be violated. To date, there has been no determination pursuant to Fed.R.Civ.P. 23(c)(1) that the suit may be maintained as a class action.

state law, have deprived him of rights protected by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983 (1970), giving jurisdiction to this court pursuant to 28 U.S.C. § 1343 (1970). Finally, the complaint alleges that the commonwealth defendants have breached Puerto Rican Law #87, 29 L.P.R.A. §§ 526–534 by failing to protect the migratory farmworkers' contractual rights relating to housing conditions. Jurisdiction is further alleged under principles of pendent jurisdiction. Plaintiff seeks declaratory and injunctive relief, as well as money damages.

For the reasons discussed below, the motion for judgment on the pleadings will be granted as to the Department of Labor of the Commonwealth of Puerto Rico and denied as to the remaining commonwealth defendants.

## I. LIABILITY UNDER THE WAGNER-PEYSER ACT

Commonwealth defendants deny the allegations of the plaintiff that they have breached any duty imposed upon them by the Wagner-Peyser Act, or that they conspired with the New Jersey defendants to violate the Act.

### A.

The Wagner-Peyser Act, 29 U.S.C. § 49 et seq. (1970), established a national system of state employment offices and created the United States Employment Service, which is within the Manpower Administration of the Department of Labor. The United States Employment Service coordinates the state employment offices and maintains an interstate clearance system that matches workers in one state with jobs in other states. The regulations promulgated by the Secretary of Labor, pursuant to the Act, set up procedures for clearing workers between states, and established standards

for housing conditions to be provided by the employers. An employer in need of workers forwards a request to the state employment agency which, after determining that in-state workers are unavailable, submits a "clearance order" to the United States Employment Service. The Service will then refer the clearance order to other state employment agencies that may have excess workers who will travel to the state of the employer to fill the request. The regulations require the state agency to ascertain that the housing conditions provided by the employer meet minimum standards before the agency may place the clearance order into the interstate clearance system. 20 C.F.R. § 602.9 (1975). *See generally, Five Migrant Farmworkers v. Hoffman*, 136 N.J.Super. 242, 345 A.2d 378 (Law Div.1975). Moreover, the United States Employment Service is required to withhold the interstate recruitment services if the state agency has not performed this function.

It has been held that the Wagner-Peyser Act and the regulations thereunder, promulgated by the United States Secretary of Labor, give rise to an implied civil cause of action which can be invoked by migratory farm workers who accept work through the interstate clearance system and are deprived of the protections and benefits guaranteed by the Act. *Gomez v. Florida State Employment Service*, 417 F.2d 569 (5th Cir. 1969). The judicial doctrine, whereby private civil remedies are fashioned from federal regulatory statutes, was recognized by the United States Supreme Court as early as 1916 in *Texas & Pac. Ry. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). The Court there granted an implied civil remedy to a railroad employee whose injury resulted from the railroad's violation of the Federal Safety Appliance Act. Federal courts have frequently employed this doctrine to find implied causes of action created by other regulatory statutes.[2]

2. *E. g., Reitmeister v. Reitmeister*, 162 F.2d 691 (2d Cir. 1947) (Communications Act of 1934) ; *Burke v. Compania Mexicana De*

*Aviacion, S. A.*, 433 F.2d 1031 (9th Cir. 1970) (National Railway Labor Act) ; *Stewart v. Travelers Corp.*, 503 F.2d 108 (9th

Where an Act of Congress grants rights to a class of persons, "it is not necessary to show an intention to *create* a private cause of action." *Cort v. Ash,* 422 U.S. 66, 82, 95 S.Ct. 2080, 2090, 45 L.Ed.2d 26 (1975) (emphasis in the original); *see J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

■ Implied civil remedies to enforce rights created by regulatory statutes have been recognized where the legislation expressly provides no effective remedy and the court determines that implied relief is necessary to carry out congressional policies. *Breitwieser v. KMS Industries, Inc.,* 467 F.2d 1391, 1392 (5th Cir. 1972).[3] The Wagner-Peyser Act was also the basis of an implied civil remedy in *Galindo v. Del Monte Corp.,* 382 F.Supp. 464 (N.D.Ill. 1974). The rationale of the *Gomez* and *Galindo* decisions was that the remedies provided by the Act were inadequate to protect employees' rights; inasmuch as the only sanction set forth in the statute is termination of federal funding for the state programs, it was deemed essential to grant private civil relief to prevent abrogation of congressional policy.

■ In order for private civil liability to be incurred, however, the defendants must have breached duties imposed on them by the Act. It is plaintiff's contention that the commonwealth defendants were required by the Act and regulations to ascertain whether the New Jersey employers would provide adequate housing and to refuse to refer the Puerto Rican workers to the interstate clearance system unless the

minimum standards were met. Citing 20 C.F.R. § 620.1(a), which provides:

The Manpower Administration of the U. S. Department of Labor has established facilities to assist agricultural employers in recruiting workers from places outside the State of intended employment. The experiences of the Administration indicate that employees so referred have on many occasions been provided with inadequate, unsafe, and unsanitary housing facilities. To discourage this practice the Administration has established a policy of denying its interstate agricultural recruitment services to employers until the *State agency* affiliated with the United States Training and Employment Service *which receives the order for interstate recruitment* has ascertained that housing and facilities: (1) Are available; (2) are hygienic and adequate to the climatic conditions of the area of employment; (3) are large enough to accommodate the agricultural workers sought; and (4) will not endanger the lives, health, or safety of workers and their families. (emphasis supplied),

plaintiff argues that the "state agency . . . which receives the order for interstate recruitment" is the agency of the state from which the workers travel. The regulations as a whole, however, indicate that the state agency referred to is the agency which "receives" clearance orders from the employer, that is, the agency of the state in which the employer is located, in this case New Jersey. This construction is supported by the use of the term "state agency" in 20 C. F.R. § 602.9 which provides that:

Cir. 1974) (Consumer Credit Protection Act); *Farmland Indus. Inc. v. Kansas-Nebraska Nat. Gas Co.,* 349 F.Supp. 670 (D.C.Neb.1972) (Natural Gas Act); *Davis v. Romney,* 355 F.Supp. 29 (E.D.Pa.1973) (National Housing Act, declaratory and injunctive relief only); *New York City Coalition for Community Health v. Lindsay,* 362 F.Supp. 434 (S.D.N.Y.1973) (Public Health Service Act); *See generally* Note, *Implying Civil Remedies from Federal Regulatory Statutes,* 77 Harv.L.Rev. 285 (1963).

3. In other situations courts have denied private civil relief for violation of federal regulatory statutes. *e. g., B. F. Goodrich Co. v. Northwest Industries, Inc.,* 424 F.2d 1349 (3d Cir. 1970); *Doak v. City of Claxton, Ga.,* 390 F.Supp. 753 (S.D.Ga.1975). *See also Cort v. Ash, supra,* 422 U.S. at 82, 95 S.Ct. 2080.

No order for recruitment of domestic agricultural workers shall be *placed into interstate clearance* unless:

(a) The State agency has established, pursuant to recruitment efforts made in accordance with regulations, policies and procedures of the Manpower Administration (United States Training and Employment Service), that domestic agricultural workers are not available locally or within the State. (emphasis supplied)

. . . . . .

(d) The State has ascertained that housing and facilities which comply with the provisions of Part 620 of this chapter are available.

The state agency upon which these duties are imposed is the agency which places orders for recruitment *"into* [the] interstate clearance" system.

Plaintiff's reliance upon 20 C.F.R. 620.1(a) is further misplaced, since the duties outlined in that section are imposed upon the United States Employment Service. The two other sections cited by the plaintiff also refer only to duties required of the United States Employment Service. 20 C.F.R. § 620.-1(c) provides:

The *services of the Administration will also be denied* when there exists an insanitary or hazardous condition not contemplated by applicable State or local law or the standards contained in this part, or where past failures to provide safe and sanitary housing indicate that the employer cannot be relied upon to comply with this part. (emphasis supplied),

while 20 C.F.R. 604.1(j) reads as follows:

It is the *policy of the United States Training and Employment Service:*

. . . . . .

To make no referral to a position where the services to be performed or the terms or conditions of employment are contrary to federal, State or local law. (emphasis supplied)

Thus, the Wagner-Peyser Act and regulations thereunder impose no duty upon the commonwealth defendants to ascertain the housing conditions on the New Jersey farms, or to refuse to fill the requests for Puerto Rican workers.

### B.

Additionally, however, plaintiffs have alleged, in paragraphs 55–57 of the complaint, that defendants Ferre, Rivera de Vincenti and Lugo conspired with New Jersey defendant Heymann and the New Jersey farmers to deprive plaintiffs of their rights under, *inter alia,* the Wagner-Peyser Act. (Note that the Departments of Labor of the Commonwealth of Puerto Rico and New Jersey are not named as co-conspirators.) To establish a civil conspiracy in this case, plaintiff must show that two or more persons combined to perform an unlawful act. *Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir. 1974); *see United Mine Workers v. Gibbs,* 383 U.S. 715, 734–735, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1966). As discussed above, neither the failure of the commonwealth defendants to ascertain housing conditions on the New Jersey farms, nor their continued referral of Puerto Rican workers to the interstate clearance system constitute a wrongful act. Therefore, the only wrongful conduct for which the conspirators could be held liable under the Wagner-Peyser Act is the alleged breach by the New Jersey defendants of duties imposed on them by this legislation.

The element of combination between the conspirators is alleged in paragraph 55 of the complaint stating that: "[these defendants] did combine, scheme, and conspire . . . ." Courts have frequently required conspiracy to be pleaded with specificity and have dismissed complaints containing mere conclusionary allegations of agreement and combination. *e. g., Powell v. Jarvis,* 460 F.2d 551, 553 (2d Cir. 1972); *Guedry v. Ford,* 431 F.2d 660, 664 (5th Cir. 1970); *Harvey v. Sadler,* 331 F.2d 387, 389–390

(9th Cir. 1964); *Smith v. Bucci Detective Agency,* 316 F.Supp. 1284, 1285 (W.D.Pa.1970). At the pleading stage in civil rights cases, however, the plaintiff's access to specific facts surrounding the defendants' conduct is often severely limited. In addition, conspiracy by its very nature is secretive. Thus, in view of Fed.R.Civ.P. 8(f), the court will liberally construe the allegations of the complaint concerning combination of the conspirators. The Third Circuit in *Ammlung v. City of Chester, supra,* takes the position that the combination element of conspiracy is pleaded with sufficient specificity if the complaint merely alleges that the defendants "conspired" or were involved in an "agreement" or "combination," 494 F.2d at 814. *See, e. g., Richardson v. Miller,* 446 F.2d 1247, 1249 and n. 1 (3d Cir. 1971); *Fletcher v. Hook,* 446 F.2d 14, 15 (3d Cir. 1971); *see generally Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In *Gomez, supra,* the court found that the complaint alleged, with sufficient specificity, that an employer and the county sanitarian had conspired with the officials of the state employment agency to violate the Wagner-Peyser Act. 417 F.2d at 578. The relevant language of the complaint stated that the "[d]efendants acted jointly in concert and in conspiracy with one another." [4]

The wrongful acts which were the object of the alleged conspiracy have been set forth fully in the complaint, that is, the breach by the New Jersey defendants of their duties under the Wagner-Peyser Act, thus giving rise to implied civil liability.[5]

The settled rule is that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Also, reasonable factual inferences should be drawn in favor of the pleader. *Quinones v. U. S.,* 492 F.2d 1269, 1273 (3d Cir. 1974). Although the allegations of conspiracy between the Puerto Rican officials and the New Jersey defendants may ultimately prove to be unsupportable, a judgment on the pleadings dismissing plaintiff's cause of action against the Puerto Rican officials under the Wagner-Peyser Act is not warranted.

## II. LIABILITY UNDER 42 U.S.C. § 1983.

The complaint asserts that the commonwealth defendants have, under color of state law, deprived plaintiff of rights protected by the Constitution or laws of the United States, thus giving rise to a claim for relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1970), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

4. The Fifth Circuit, in holding that these allegations of conspiracy were sufficiently specific, stated that "[t]he remedy is not dismissal which halts the proceedings at the Courthouse door. The remedy is full use of flexible discovery." 417 F.2d at 577, n. 32.

5. The plaintiff, therefore, has satisfied the requirement adhered to by the Third Circuit that complaints in civil rights cases must be

specifically pleaded in order to avoid a motion to dismiss. *Esser v. Weller,* 467 F.2d 949, 950 (3d Cir. 1972); *Kauffman v. Moss,* 420 F.2d 1270, 1275 (3d Cir. 1970); *Negrich v. Hohn,* 379 F.2d 213, 215 (3d Cir. 1967). This rule does not deal with allegations of combination or conspiracy, but rather concerns the specific acts which resulted in deprivation of the plaintiff's civil rights.

Jurisdiction is alleged under 28 U.S.C. § 1343(3) and (4) (1970) which read as follows:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> . . . . . .
>
> (3) To redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
>
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

■ Since § 1983 refers to "persons," it has been held that government bodies cannot be joined as defendants in such actions. *Monroe v. Pape*, 365 U.S. 167, 191, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 511–513, 93 S.Ct. 2222, 37 L. Ed.2d 109 (1973). The Department of Labor, as an arm of the executive, is the alter-ego of the government of Puerto Rico. *Pla Aguirre v. Commonwealth of Puerto Rico*, 353 F.Supp. 1294, 1296 (D.P.R.1972). Therefore, no cause of action under § 1983 exists against this defendant.

■ ■ § 1983 further requires that the named defendants have acted under color of state law. It is not necessary, however, that the alleged acts involve the enforcement of a state statute or regulation. In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970), the Court held that a persistent practice by state officials constituted action under color of state law. *Id.* at 162–169, 90 S.Ct. 1598. In fact, liability under § 1983 was found in *Monroe v. Pape, supra,* notwithstanding that the conduct was in violation of state law, since the defendant police officers were clothed with official authority. 365 U.S. at 183–187, 81 S.Ct. 473. The Court cited *U. S. v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941) in which Justice Stone stated that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." 313 U.S. at 326, 61 S.Ct. at 1043. Clearly, the failure of the Puerto Rican officials to perform any duties imposed upon them by federal or local law was action "under color of state law." *See Henig v. Odorioso*, 385 F.2d 491, 494 (3d Cir. 1967).

■ The Puerto Rican officials would also have acted under color of state law by conspiring with the New Jersey officials. Although participation in the alleged conspiracy may not have involved conduct in their official capacities, these defendants would still fall within the ambit of § 1983, since even private persons act under color of state law when acting in conjunction with state officials.[6] *Adickes v. S. H. Kress & Co., supra*, 398 U.S. at 150–52, 90 S. Ct. 1598.

Plaintiff's § 1983 cause of action is based upon the deprivation of statutory as well as constitutional rights. Plaintiff first contends that his rights under the Wagner-Peyser Act have been denied. In addition, it is argued that the deprivation of these statutory rights in New Jersey had the effect of abridging the plaintiff's constitutional right to travel here from Puerto Rico.

---

6. In *Gomez, supra*, the private employer and county sanitarian were found liable under § 1983 for acting in conjunction with state officials who deprived plaintiffs of their rights under the Wagner-Peyser Act, 417 F.2d at 577–78. The employer was similarly held accountable in *Galindo, supra*, 382 F.Supp. at 469.

The commonwealth officials cannot be liable under § 1983 for their own conduct in violating federal legislation or local law. Neither the Wagner-Peyser Act nor Puerto Rican Law #87 imposes a duty upon the Puerto Rican officials to enforce the federal statutory rights of migratory workers who accept employment in New Jersey. The abridgment of plaintiff's constitutional right to travel is claimed to arise from the denial of these same federal statutory rights. Therefore, plaintiff's constitutional rights also could not have been abridged by the Puerto Rican officials' own failure to enforce the Wagner-Peyser Act or local law.

Thus, any cause of action against the commonwealth officials under § 1983 must be based upon their participation in a conspiracy which resulted in unlawful conduct by the New Jersey defendants. The complaint sufficiently alleges that the New Jersey defendants, with whom the commonwealth officials conspired, deprived plaintiff of rights protected by an Act of Congress. Regardless of the validity of plaintiff's alternative constitutional argument, which need not be reached here,[7] plaintiff has stated a cause of action under § 1983 based upon the infringement of his Wagner-Peyser rights.

It has been held that the protection of § 1983 may be invoked even where relief is sought for deprivation of wholly statutory rights. *Greenwood v. Peacock*, 384 U.S. 808, 829–830, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966); *Dandridge v. Williams*, 397 U.S. 471, 475, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The Supreme Court, however, has expressly reserved judgment on the question of whether the scope of the jurisdictional statute, 28 U.S.C. § 1343(3),

is coextensive with 42 U.S.C. § 1983 in actions based upon purely statutory rights. *Hagans v. Lavine*, 415 U.S. 528, 533–35, n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Lynch v. Household Finance Corp.*, 405 U.S. 538, 543–544, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). § 1983 establishes a cause of action to redress deprivation of rights secured by the Constitution and "laws," while § 1343(3) provides jurisdiction for proceedings to redress deprivation of rights secured by the Constitution or "an Act of Congress providing for equal rights." An analysis of the legislative history, however, leads to the conclusion that this language was not intended to reduce the jurisdiction of federal district courts over § 1983 actions. *Blue v. Craig*, 505 F.2d 830 (4th Cir. 1974). Rather, the term "equal rights," which first appeared in the 1875 revision of the Civil Rights Act of 1871, had a broader meaning than it does today. *Id.* at 839. The purpose of the 1875 revision was not to effect substantive changes in the 1871 Act, but instead merely sought to divide it into separate jurisdictional and substantive statutes. *Id.* at 838, *citing* Herzer, *Federal Jurisdiction Over Statutorily-Based Welfare Claims*, 6 Harv.Civil Rights—Civil Liberties L.Rev. 1, 7–8 (1970).

Moreover, it has been held that jurisdiction over cases involving the Wagner-Peyser Act can be based on 28 U.S.C. § 1343(4). In *Gomez, supra,* the court explained that claims growing out of the Wagner-Peyser Act give rise to a cause of action under § 1983. Jurisdiction, therefore, is established under 28 U.S.C. § 1343(4), since § 1983 is itself an "Act of Congress providing for the protection of civil rights." 417 F.2d at 580, n. 39. The Ninth Circuit in *Blue v. Craig, supra,* similarly found jurisdic-

---

7. Under the "rule of necessity" when a question of statutory construction or general law is dispositive, alternative issues of constitutional law should not be decided. *Mayor v. Educational Equality League,* 415 U.S. 605, 635–637, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974) (White, J., dissenting); *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Light v. U. S.,* 220 U.S. 523, 538, 31 S.Ct. 485, 55 L.Ed. 570 (1911).

tion under § 1343(4) for a § 1983 action which was based upon the Social Security Act. The decision of the Supreme Court in *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968) provides support for the view that statutes such as § 1983 are among those acts "providing for the protection of civil rights" within the meaning of § 1343(4). In *Jones* jurisdiction over a 42 U.S.C. § 1982 (1970) action, concerning discrimination in the sale and rental of property, was based upon § 1343(4). 392 U.S. at 412, n. 1, 88 S.Ct. 2186.

Thus, a judgment on the pleadings dismissing plaintiff's cause of action against the Puerto Rican officials under § 1983 would be improper.

## III. PENDENT JURISDICTION OVER CLAIMS BASED ON VIOLATION OF PUERTO RICAN LAW.

 The plaintiff further alleges that the commonwealth defendants have failed to comply with Puerto Rican Law #87, 29 L.P.R.A. §§ 526–534 and its implementing regulations. This legislation requires, *inter alia,* the establishment of minimum guarantees in the employment contracts of Puerto Rican migratory workers and the inspection and certification of the living conditions provided by their employers. It is within the power of this court, under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), to assert pendent jurisdiction over the claims based on Puerto Rican law, since the federal claim is substantial enough to confer subject matter jurisdiction, and plaintiff's claims under both federal and Puerto Rican law are derived from a common nucleus of operative fact. *Id.* at 725, 86 S.Ct. 1130. But the Supreme Court has stressed that pendent jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Id.* at 726, 86 S.Ct. at 1139.

The complaint seeks damages and the issuance of an order directing the com-monwealth defendants to perform their duties in accordance with Law #87. The Supreme Court of Puerto Rico, however, has not considered the question of whether these statutory requirements subject the government officials to tort liability and mandatory injunctions or instead merely establish duties to be performed within their discretion. As Justice Brennan in *Gibbs* emphasized:

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. 383 U.S. at 726, 86 S.Ct. at 1139.

Considerations of comity are especially important where, as in the instant case, the issue over which pendent jurisdiction is to be asserted does not involve the law of the state in which this court sits, but rather the law of a distant jurisdiction such as Puerto Rico, with a different language and culture. *See Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 42–43, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970). After considering the factors of "judicial economy, convenience and fairness to [the] litigants," *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139, it is concluded that the exercise of pendent jurisdiction in this case would be inappropriate. Plaintiff can assert his cause of action based on Puerto Rican law in the courts of the Commonwealth.

## CONCLUSION

 The motion for judgment on the pleadings is hereby granted as to the Department of Labor of the Commonwealth of Puerto Rico, since it directly breached no duty imposed by the Wagner-Peyser Act, was not named as a conspirator with the New Jersey defendants, and is not subject to suit under 42 U.S.C. § 1983. The issue of sovereign immunity, therefore, need not be reached. The motion is denied, however, as to the remaining commonwealth

defendants,[8] since the pleadings reflect potential liability under the Wagner-Peyser Act and 42 U.S.C. § 1983, based upon their alleged participation in a conspiracy with the New Jersey defendants.

An appropriate order may be submitted.

8. The complaint is sufficient against the successors in office of the Puerto Rican officials, since the pleadings indicate that they will continue the practices of their predeces- sors. *Mayor of Philadelphia v. Educational Equality League,* 415 U.S. 605, 622, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974).