**Geronimo JUAN, Inmate No. 55882, Plaintiff,**

v.

**John J. RAFFERTY, Superintendent New Jersey State Prison Rahway, Peter J. Fenton, former Superintendent New Jersey State Prison Rahway, Patrick H. Arvonio, Assist. Superintendent New Jersey State Prison Rahway, William Fauver, Commissioner of New Jersey Department of Corrections, John J. Fannon, Disciplinary Hearing Officer, New Jersey State Prison Rahway, Sgt. Louis Hagler, Sgt. James Lee, Officer Joseph Calzaretta, Officer Richard Crawford, Officer Joseph Tartza, Officer Joseph Caccavale, Officer Leonard Truchan, Officer Joseph Mullen, Officer Robert Heaney, as individuals and in their official capacities, Defendants.**

**Civ. A. No. 83–519.**

United States District Court, D. New Jersey.

Jan. 5, 1984.

Norman A. Cohen, Perth Amboy, N.J., for plaintiff.

Irwin I. Kimmelman, Atty. Gen. of New Jersey, Trenton, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Geronimo Juan, an inmate in the New Jersey State Prison system, brought this action against various officers and prison officials for alleged violations of constitutional rights. The cause of action arises under 42 U.S.C. § 1983, and jurisdiction is conferred by 28 U.S.C. § 1343.

Defendants have moved for partial summary judgment.

FACTS

For the purposes of this motion all issues of fact must be construed in the light most favorable to Juan. Applying this standard, the depositions and affidavits establish the following facts.

On October 1, 1982, Juan was an inmate at Rahway State Prison. At approximately 7:30 a.m., at the steamline counter in the prison mess hall, Juan had a "minor verbal and physical altercation" with another inmate, Wilbert Harrington. According to Victor Garcia, another inmate present in the mess hall at the time, the fight only lasted a couple of seconds before it was broken up. Juan testified on deposition that he and Harrington each threw one punch at the other and that each successfully blocked the other's punch.

A number of corrections officers, including two who were on the opposite side of the steam counter from the fighting inmates, moved to separate them. According to inmates who were present, Officer Leonard Truchan slipped as he was trying to jump over the counter and fell to the ground, injuring his face. Juan claims that he did not touch Truchan and did not cause him to fall.

Other corrections officers succeeded in separating and restraining Juan and Harrington. As he was taken from the mess hall by the officers, Juan had no bruises or blood on his face. Juan offered no resistance as he was removed.

John Washington, who was an inmate at Rahway on October 1, 1982, was being detained on that day in Cell # 24 ILXX, the administrative segregation cells. At approximately 7:30 to 8:00 a.m., an inmate, who Washington later learned was Juan, was escorted past Washington's cell, and placed in Cell # 26, the cell next to Washington's. Washington claims there were no signs of blood or bruises on Juan's face as he passed.

Washington stated that after Juan was placed in Cell # 26 he heard Sgt. James Lee say to other officers that Juan would be beaten because a correction officer had been injured as a result of Juan's fight in the mess hall. Washington stated that he then observed Sgt. Louis Hagler, Officer Joseph Calzaretta and Lee, along with perhaps two other officers whose names Washington did not know approach Juan's cell. Washington heard a commotion which he believed was the beating of Juan by the officers, and a few minutes later saw Juan escorted by his cell again by two officers. He stated that Juan's face was bloody and that Juan could not walk under his own power.

On October 1, 1982, inmate Garcia was assigned to sweep the aisle in front of the ILXX administrative segregation cells. He stated in his affidavit that:

When I returned to my job in ILXX Juan was already in a cell. Officer Crawford approached me and told me to go upstairs and "lock everyone in". Crawford told me that after the officers

"were done" I could come back and do my job. As Crawford was speaking to me I saw 4 or 5 other officers walking down the aisle in front of the cells approaching us. Sgt. Lee was one of the officers as was Officer Calzaretta. I am not sure of the names of the others.... It is common knowledge throughout the prison that when the inmate working in ILXX is told to lock everyone it means that something is going to happen; usually an inmate is going to be beaten.

In his deposition, Juan testified that Hagler and Caccavale entered his cell along with three other officers, whose identity Juan did not know. According to Juan, Hagler said, "Why did you punch the cop?" Although Juan denied punching Officer Truchan, Juan was then beaten by Hagler, Caccavale and a third officer. Juan testified that although Sgt. Lee had been in his cell about five minutes before the beating, he was not present during the beating. Juan was taken to the hospital a few minutes later.

On October 1, 1982, Juan was charged with the disciplinary offenses of fighting with inmate Harrington and of assaulting Officer Truchan. On October 4 and 6, 1982, hearing officer John Fannon adjudicated the charges against Juan. Officers Truchan and Joseph Tartza submitted reports alleging that Juan had thrown Truchan to the ground as Truchan was attempting to stop the fight. In his summary of testimony and evidence used in making his decision, Fannon stated that the Reports of Officers Joseph Mullen and Caccavale, as well as those of Truchan and Tartza, indicated that Juan had thrown Truchan to the ground. However, neither Mullen nor Caccavale's report states that Juan punched or threw down Truchan. Their reports do state that they observed bruises on Juan's face as he was led away from Harrington and that they believed these bruises were received during the fight with Harrington.

Juan was represented at the hearing by inmate Rene Santana, a law library paralegal. Santana informed Fannon that Santana had a list of 104 prospective witnesses who had seen the events in the mess ·hall. Fannon advised him that he could not call them all, but agreed to accept any written statements which Santana had obtained from inmates. Santana submitted statements from 12 inmates which all stated that Truchan had slipped as he was jumping over the counter and that Juan never touched him.

Fannon found Juan guilty of the charges. For assaulting Truchan, Juan was sentenced to 15 days confinement in Disciplinary Detention and one year of Administrative Segregation. Fannon also recommended that the matter be referred to the prosecutor for possible criminal prosecution. Apparently, Juan was later prosecuted for and acquitted of the charge of assaulting Truchan.

Juan alleges that Fannon failed to comply with prison procedures for disciplinary adjudications prescribed by Department of Corrections Standards in the following ways:

(1) Juan's request to call witnesses was denied even though granting the request would not have been "unduly hazardous to institutional safety or correctional goals." (DOC Std. 254.-18).

(2) Juan was denied the opportunity to confront and cross-examine the witnesses against him in violation of a rule providing such a right "... particularly when serious issues of credibility are involved." (DOC Std. 254.-19).

(3) Juan was found guilty based on evidence that was not "substantial", in violation of a rule that "A finding of guilt at a disciplinary hearing shall be based on substantial evidence that the inmate has committed a prohibited act." (DOC Std. 254.20).

## CONCLUSIONS OF LAW

Juan's complaint consists of nine counts. Defendants have moved for summary judgment as to each one.

*Count I*

■ In his complaint, Juan alleges that defendants Hagler, Lee, Calzaretta, Crawford, Tartza, Caccavale and Heaney beat him in a cell on October 1, 1982. There is no question that a claim of assault on a prisoner by his custodian is cognizable under 42 U.S.C. § 1983. *Collins v. Hladky*, 603 F.2d 824 (10th Cir.1979).

However, defendants argue that all of the named officers except Hagler and Caccavale should be dismissed from this count since, in his deposition, Juan could only identify those two among the officers who came to his cell.

■ Juan has submitted evidence, through the affidavits of inmates Garcia and Washington, that defendants Crawford, Lee, Heaney and Calzaretta were also involved in the beating. These four, therefore, cannot now be dismissed on a motion for summary judgment. Although Juan himself stated that Lee was not present during his beating, Juan has presented evidence that Lee participated in the planning of the beating. If Lee did participate in a conspiracy to beat Juan, *see* Count II, *infra*, then he would be liable for the beating itself.

It is, of course, possible that an inmate will not know the names of some corrections officers in the facility where he is incarcerated. Juan alleges that he did not know the identity of three of the officers who came to his cell to beat him. He apparently believes that Officer Tartza, who was present at the mess hall fight and who filed a report regarding it, may have participated in the beating. Juan apparently relies on the facts that Tartza reported that Juan flipped Truchan and that Tartza reported that Juan looked in "bad shape" when he left the mess hall.

I believe that Juan has presented sufficient evidence regarding Tartza's possible animus toward him to survive a summary judgment motion on Count I at this early stage.

*Count II*

Juan alleges that defendants Hagler, Calzaretta, Crawford, Heaney, Caccavale, Tartza and Lee engaged in a conspiracy to beat Juan, in violation of 42 U.S.C. §§ 1983 and 1985(3).

Defendants contend that Juan has not pleaded conspiracy with sufficient particularity and, more specifically, that Juan has not alleged facts to show the existence of an agreement.

■ To allege sufficiently civil conspiracy, there must be allegations of a combination, agreement or understanding among the defendants. *Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974). At the pleading stage of a civil rights case, *Ammlung* has been read to hold that "the combination element of conspiracy is pleaded with sufficient specificity if the complaint merely alleges that the defendants 'conspired' or were involved in an 'agreement' or 'combination' ...." *Vazquez v. Ferre*, 404 F.Supp. 815, 822 (D.N.J.1975). The rationale for this position is that at this early stage in a civil rights action, "Plaintiffs' access to specific facts surrounding defendants' conduct is often severely limited. In addition, conspiracy by its very nature is secretive." *Id.* For these reasons, liberal construction of conspiracy allegations is required. *Id.*

■ Juan has pleaded conspiracy with sufficient particularity. He has alleged in his complaint that the beating by defendants was an overt act in furtherance of the conspiracy. I believe the joint beating in itself constitutes a sufficient allegation of agreement to satisfy the pleading requirement for a conspiracy under § 1983.

■ However, defendants correctly argue that Juan has failed to make out a claim under § 1985(3). To state a claim under this section, a plaintiff must show some racial or other cognizable class-based discrimination. *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1797, 29 L.Ed.2d 338 (1971). Juan has pleaded no facts supporting a claim that he is a member of a protected class or that defendants'

actions against him were based on his membership in such a class. Summary judgment for defendants is granted as to the Count II cause of action to the extent it is based on § 1985.

## Count III

■ Juan asserts a cause of action under §§ 1983 and 1985 for defendants Truchan, Mullen, Tartza and Caccavale's alleged intentional and malicious false statements in their reports and/or at the adjudication of the disciplinary charges. The claim based on § 1985 must again be dismissed.

Defendants' first attack is that Juan is improperly attempting to obtain *de novo* review of the disciplinary proceeding in federal court. This is not, as I read the complaint, Juan's purpose. Rather, Count III purports to state a cause of action under the civil rights statute for alleged perjury by corrections officers which resulted in a deprivation of liberty for Juan by his sentence to a year in administrative segregation.

Defendants contend that the corrections officers should enjoy absolute immunity for their function as witnesses in submitting evidence to the hearing officer. The United States Supreme Court recently held that a police officer enjoys absolute immunity in a § 1983 action alleging that he gave perjured testimony at the civil rights plaintiff's criminal trial in state court. *Briscoe v. Lahue*, —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ However, the rule that a police officer is absolutely immune from civil liability for his testimony in a state criminal trial does not mandate that a corrections officer giving testimony for a prison administrative proceeding is also absolutely free from civil liability. I believe that he is entitled only to qualified immunity for the same reasons that the disciplinary charge hearing officer is entitled only to qualified immunity. *See infra.* The motion for summary judgment on Count III is denied.

## Count IV

■ Count IV alleges a conspiracy by defendants Truchan, Tartza, Mullen and Caccavale to conform their reports and/or testimony regarding the mess hall incident. In Count IV Juan has successfully made out a conspiracy claim regarding the substantive claim asserted in Count III.

## Count V

This count alleges that hearing officer Fannon violated Juan's rights under the due process clause of the Fourteenth Amendment by failing to comply with Department of Corrections standards.

Defendants claim that Fannon is protected by absolute judicial immunity, and must be granted summary judgment. They argue that a disciplinary hearing officer performs a quasi-judicial function as do parole boards, and is therefore entitled to absolute immunity as are these boards. *See Franklin v. Shields*, 569 F.2d 784, 798 (4th Cir. 1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978). What little law there is on the question of what level of immunity prison hearing officers are entitled to suggests a different result.

In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court held that common law absolute judicial immunity extends to actions brought under § 1983. However, in *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975), the Court held that school board members and school administrators who had made the decision to expel student-plaintiffs were entitled only to qualified immunity. In so holding, the Court acknowledged that "school board members function at different times in the nature of legislators and adjudicators in the school disciplinary process." *Id.* at 319, 95 S.Ct. at 999.

The Third Circuit has interpreted *Wood* to mean that there is not an absolute immunity covering non-judicial state government officials performing adjudicatory functions. *Skehan v. Bd. of Trustees of Bloomsburg St. College*, 538 F.2d 53, 60 (3d Cir.1976); *see also 290 Madison Corp. v. Capone*, 485

F.Supp. 1348, 1354 (D.N.J.1980). The assumption underlying *Wood* and *Skehan* seemed to be that because the defendant-officials performed other functions as well as adjudicatory functions there was less reason to think that they could function as a truly independent judicial body when acting in that capacity. Therefore, absolute immunity was neither required nor desirable.

■■■ Similarly a hearing officer in a prison disciplinary hearing should be entitled only to a qualified immunity. The hearing officer is an employee of the Department of Corrections and adjudicates disciplinary charges brought by the Department. He is usually, as in this case, weighing the credibility of inmates against the credibility of his fellow correctional officers. Given the close relationship of the adjudicator to the institution prosecuting the charges, it is apparent that the adjudicatory process in prison disciplinary hearings is not particularly independent. The rationale for granting absolute immunity—to preserve the independence of the adjudicative process—is therefore less relevant in this situation than in a court proceeding or even in a proceeding before an administrative law judge. It is significant that administrative law judges have been given an independence from the agencies whose actions they review—an independence which disciplinary hearing officers in prisons do not have. *See Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (absolute immunity extended to federal ALJs); *cf., Williams v. Red Bank Bd. of Ed.*, 662 F.2d 1008 (3d Cir.1981) (proceedings before New Jersey administrative law judge sufficiently independent and otherwise judicial in nature to require *Younger* abstention).

I believe that granting these officers only qualified immunity will actually enhance their independence, by counteracting the understandable institutional pressures on them.

The Sixth Circuit, having considered the issue directly, has recognized only qualified immunity for prison disciplinary hearing officers. The court in *Jihaad v. O'Brien*, 645 F.2d 556, 561 (6th Cir.1981), stated:

> We do not believe that a prison official who conducts an informal disciplinary hearing [resulting in disciplinary segregation] is in one of "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." *Butz v. Economou....* Rather, such an official is covered by the general rule that "in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to qualified immunity...." *Butz....*

I conclude that defendant Fannon is entitled only to a qualified immunity.

■■■ Whether Fannon violated the DOC standards in bad faith as Juan alleges is a question of fact which I cannot dispose of on this motion for summary judgment.

*Counts VI—IX*

■■■ The remaining counts allege constitutional violations by higher officials in the corrections department either for failure to prevent the actions of the subordinate defendants or for improper processing of Juan's appeal from defendant Fannon's decision. Defendants have moved for summary judgment as to all of these counts. Juan has submitted no response regarding any of them. There is nothing in the record which would overcome the qualified immunity with which these defendants are cloaked. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Summary judgment is granted in their favor on Counts VI to IX.

Defense counsel is requested to submit a form of order implementing this opinion.